Hillsborough,  
June 28, 1928.

FRANK B. JOHNSON *v.* BOSTON & MAINE RAILROAD.

*Karl E. Dowd, Hamblett & Hamblett* and *Robert W. Upton* (*Mr. Upton* orally), for the plaintiff.

*Warren, Howe & Wilson* (*Mr. Howe* orally), for the defendant.

PEASLEE, C. J.   "No person shall operate a motor vehicle upon any way in this state unless licensed." (Laws 1921, *c.* 119, *s.* 8). The plaintiff was driving a car in violation of this statute, and the question is presented, whether his conduct was a legal wrong as to the defendant. "The true test will be found in a correct ascertainment of the legislative intention." *Lindell* v. *Stone*, 77 N. H. 582, 585.

The mere fact that one is violating a statute when injured does not bar a recovery. If the violation had nothing to do with the accident, it is immaterial to the issue of responsibility. *Wentworth* v. *Jefferson*, 60 N. H. 158, and cases cited; *Lindell* v. *Stone, supra*. On the other hand, if the violation is causal, it puts the offender in the class of those who fail to obey legal rules for conduct. *Hanscomb* v. *Goodale*, 81 N. H. 150; *Osgood* v. *Maxwell*, 78 N. H. 35; *Bresnehan* v. *Gove*, 71 N. H. 236; *Brember* v. *Jones*, 67 N. H. 374.

A statute requiring a license for the doing of certain acts makes the unlicensed actor a wrongdoer. He cannot claim a legal right which is dependent upon such illegal conduct. *Albertson & Co.* v. *Shenton*, 78 N. H. 216; *Karamanou* v. *Company*, 80 N. H. 420; *Dunbar* v. *Locke*, 62 N. H. 442; *Moskwa* v. *Nassikas*, 82 N. H. 559.

One object of the statute under consideration is the protection of those using the highway. The right to use the way is limited as it is for protective purposes. That protection was designed to afford an injured party cause for complaint against those making an unlawful use. He was not to be put to proof of negligence. A new standard of right, or rule of conduct, was set up. A different conclusion would leave the ignorant or incompetent operator to experiment upon the highways at the expense of whomever he chanced to meet; and the injured party's sole recourse would be through proof of negligence. It was the design of the legislature to create an effective barrier against such results.

It is self-evident that the chief object of the statute is to protect other users of the highways. The form of the act reinforces this

352

idea. Not content with the general provision that no person shall operate a motor vehicle until licensed (Laws 1921, c. 119, s. 7), the statute also makes specific provision that he shall not operate "upon any way in this state." *Ib.*, s. 8. Absence of such a provision has been treated as a distinguishing feature in civil suits. *Hemming* v. *New Haven*, 82 Conn. 661, 664.

The provisions that no license shall be granted to a person under sixteen years of age, nor a chauffeur's license to one under eighteen (s. 7) show that the licensing feature of the act was something more than a mere revenue measure. *Albertson & Co.* v. *Shenton*, 78 N. H. 216.

The same idea finds expression in the provision as to those learning to operate. They are permitted upon the highways "if riding with or accompanied by a licensed chauffeur or operator." *Ib.*, s. 8. Had the prohibition related to revenue only, a provision of this sort would have been superfluous. The provision for revocation if the licensee operates "so as to endanger the public" (*Ib.*, s. 16) carries the same implication. So also does the provision for suspension of sentence "if no person or property could have been endangered" by the offense. *Ib.*, s. 15.

Section 13 of the act furnishes further evidence tending to prove that the legislature understood that the enactment of statutory regulations and prohibitions imposed duties and created rights as to private parties. After prohibiting unreasonable speed, and providing that proof of certain speeds shall be conclusive of unreasonableness, it was added that in civil suits this should be *prima facie* only. Had there been a legislative purpose to limit the application of the act generally to the imposition of penalties, there would have been no occasion for this special limitation as to private litigation based upon the act. It confirms what is believed to have been the common understanding, that this statute has some materiality in civil suits. It was intended to be both preventive and remedial.

The original statute upon this subject contained a provision that injury to a person or his team by reason of the mere presence of a motor vehicle in the highway should constitute a *prima facie* case of liability unless such vehicle was "under the control of or accompanied by" a licensed operator. Laws 1905, c. 86, s. 13. This provision was omitted when the law upon the whole subject was revised in 1911. A new provision was then added requiring each applicant for a license to pass an examination. Laws 1911, c. 133, s. 8. This revision contains no specific reference to civil liability,

except that as to speed, before referred to (s. 14). This provision was not in the earlier act, and its insertion in the same act that repealed Laws 1905, c. 86, is of importance as showing the legislative understanding that the new law then adopted was applicable to civil suits. The somewhat crude provision of the first act was repealed, and the whole subject of civil liability was left to follow the usual rule as to violation of statutory duty, with a single exception as to speed.

Applicability of the act to civil suits has been assumed by the court, quite as a matter of course. *Hanscomb* v. *Goodale*, 81 N. H. 150; *Brody* v. *Gilbert*, 82 N. H. 158; *Summerfield* v. *Wetherell*, 82 N. H. 513. The phrase "the command of statute law" has been aptly used to describe its provisions relating to the use of highways. *Dow* v. *Latham*, 80 N. H. 492, 496.

It is not like the Sunday law (*Wentworth* v. *Jefferson*, 60 N. H. 158 and cases cited), which has no relation to the safety of travel, but was designed solely to promote Sunday observance. Nor is it to be likened to the employment during school time of a boy fifteen years old; because the law there in question was designed to promote education, and for no other purpose. *Lindell* v. *Stone*, 77 N. H. 582. The suggestion is there made that if the object of the statute had been the protection of the child, the result might be different. Such a situation would be comparable to the present case. Each would be similar to the speed law (*Hanscomb* v. *Goodale*, 81 N. H. 150), the sliding law (*Osgood* v. *Maxwell*, 78 N. H. 35) and other regulations of highway use (*Nadeau* v. *Sawyer*, 73 N. H. 70; *Brember* v. *Jones*, 67 N. H. 374).

It is urged that even if the violation be one of which the defendant can complain, it is at most only evidence of fault to be considered by the jury. While there are decisions which would warrant that conclusion, the present rule in this jurisdiction is clearly otherwise.

When the question was first presented, it was decided that the causal violation of a statutory rule of conduct was conclusive proof of a legal fault. The jury were instructed that it was only evidence for them to consider upon the issue of fault. In sustaining an exception to the charge it was said: "The question of negligence or fault, under the statute, is one of law, arising upon the facts proved, and not a question of fact to be determined by the jury. It was not, therefore, a proper matter for the consideration of the jury, and should not have been submitted to them. The jury should have been instructed that the plaintiff was entitled to their verdict,

upon the facts reported." *Brooks* v. *Hart,* 14 N. H. 307, 313, 314.

The so-called Sunday law violations (*Norris* v. *Litchfield,* 35 N. H. 271; *Corey* v. *Bath,* 35 N. H. 530; *Sewell* v. *Webster,* 59 N. H. 586; *Wentworth* v. *Jefferson,* 60 N. H. 158) all go upon the ground that the offense was not causal. The same conclusion was reached in *Norris* v. *Litchfield, supra,* as to the effect of accidental presence on the wrong side of the road, as related to injuries received through a defect in the highway. The cases are plainly distinguishable from *Brooks* v. *Hart, supra.* As the latter case was cited with approval in a decision rendered at the same term as *Norris* v. *Litchfield* (*Graves* v. *Shattuck,* 35 N. H. 257), it is evident that it was understood that there was no conflict between the cases.

*State* v. *Railroad,* 58 N. H. 408, 410, is expressly put upon the ground that violation of statutory duty to the plaintiff was at least evidence of fault. It was said that "whether the law is more favorable than that for the plaintiff, it is not necessary in this case to inquire." *Brooks* v. *Hart, supra,* is cited as authority.

*Lyons* v. *Child,* 61 N. H. 72, holds that unintentional driving on the left side of the road, when not negligent, is not within the rule of liability laid down in *Brooks* v. *Hart, supra.* The suggestion that although blamelessness in fact may be made ground for liability, it is not usually cause for complaint (*Ib.,* 75), has no application here. There is no question but that the plaintiff knew his driving a car was prohibited.

Thus far the idea that the causal violation is only evidence of fault finds no support in our decisions. In *Bly* v. *Railway,* 67 N. H. 474, 478, it was said concerning a violation of the speed statute: "This law was competent evidence on the question of the defendants' negligence." The question to be decided was whether evidence of violation was properly admitted. Under those circumstances this statement falls far short of a holding that a violation of the statute would be only evidence. Of the local cases there cited two furnish no basis for the present claim. The holding in *State* v. *Railroad, supra,* has already been stated herein; and *Nutter* v. *Railroad,* 60 N. H. 483, merely decides that upon the question of the plaintiff's care the defendant's violation of the speed law was evidence, since it might be found that he reasonably relied upon the lower and lawful speed. The third case, *Clark* v. *Railroad,* 64 N. H. 323, was like the *Bly* case in that it only involved the aspect of the question that violation might be put in evidence or made ground for liability. It cites the *Nutter* case as authority for the proposition that illegal

speed is evidence of fault, although that question was not there involved or considered.

Again, in *Evans* v. *Railroad*, 66 N. H. 194, 195, it was said, upon a motion for a nonsuit, that from the fact of failure to sound the crossing whistle "it was competent for the jury to find that they were guilty of negligence." No authority is cited and there is no discussion of the matter. A like situation existed in *Tucker* v. *Railroad*, 73 N. H. 132.

None of these cases suggests that *Brooks* v. *Hart*, *supra*, is overruled. None of them deny the decision therein, and the suggestion in *State* v. *Railroad*, 58 N. H. 408, that proof of causal violation is an actionable fault. None of them presented that question, and the inferences in relation thereto which would be drawn from the language used if the proposition had been in issue, are not to be drawn here. Another case, decided after the *Clark* and *Evans* cases and before the *Bly* case, makes this certain. In *Brember* v. *Jones*, 67 N. H. 374, *Brooks* v. *Hart* is quoted with approval. A decision of the question whether violation of the law of the road was "legal negligence" was expressly withheld, and the case was disposed of upon the theory that if the defendant was thus in fault, the plaintiff's contributory wrong was not negatived by the findings of the referee. In *Lane* v. *Concord*, 70 N. H. 485, it was held in terms that violation of an ordinance is not conclusive of the issue of fault. The nature of the question is not discussed, *Brooks* v. *Hart* is not referred to, and in none of the three cases cited (*State* v. *Railroad*, 58 N. H. 408; *Brember* v. *Jones*, 67 N. H. 374; *Bly* v. *Railroad*, 67 N. H. 474) was the matter passed upon. Moreover the decision in the *Lane* case is also put upon the ground that the ordinance did not cover the matter complained of. The decision was approved in *Page* v. *Brooks*, 79 N. H. 70.

*Bresnehan* v. *Gove*, 71 N. H. 236, 238, 239, suggests the true application of the rule that violation of a statute "is evidence." "If it is assumed that the speed at which the defendant was driving his team at the time of the accident was illegal, . . . that fact is only evidence that if he had been driving at a slower rate the collision might not have occurred, and hence that it was the efficient cause of the accident as a matter of fact. But it does not establish the proposition, as a matter of law, that if his rate of speed had not exceeded five miles an hour (the statutory limit) the accident would not have happened." This, in substance, is a recognition of the rule that causal violation is legal fault.

In *Nadeau* v. *Sawyer*, 73 N. H. 70, the suggestion is again made that the statute prescribes a rule of conduct, the case being disposed of upon the ground that it is at least relevant upon the issue of care.

*Clough* v. *Company*, 75 N. H. 84; 260 Briefs and Cases, 501, declares that violation of a statute is competent evidence, and approves an instruction that failure to obtain a license for a wire line over a highway is evidence of negligence but not conclusive. *Thompson* v. *Company*, 77 N. H. 92, relies upon this case to sustain the admission of like evidence, but the effect of such proof is not considered.

In two recent cases it has been affirmatively held that causal violation of a statute is an actionable fault. *Osgood* v. *Maxwell*, 78 N. H. 35; *Hanscomb* v. *Goodale*, 81 N. H. 150. In the first case the plaintiff's intestate was sliding down hill on a public street, in violation of law. It appearing that there was no evidence that the defendant could have avoided the accident after he saw the situation, it was held not to be error to instruct the jury that if the decedent was sliding in violation of law the plaintiff could not recover. "As the defendant could not have prevented the accident after the danger became imminent, then the sliding of the plaintiff's intestate must have contributed to cause the accident, and if illegal, the plaintiff could not recover." (*Ib.*, 39.)

In the *Hanscomb* case the defence was that the plaintiff's intestate was riding a bicycle at an illegal speed. The defendant requested an instruction that if this was proved "he was guilty of an illegal act, and if this contributed to his injury, he cannot recover." In holding that this instruction should have been given it was said: "Whatever a violation of a statute may or may not be, it is not merely evidence from which an actionable wrong may be found, neither does it in and of itself constitute an actionable wrong, for while the state may be entitled to a verdict if it shows that the defendant violated a statute, that is not true in a civil action in that the plaintiff must show not only that the defendant has done an act forbidden by statute, but also that the plaintiff has been injured or damaged by it. In that case, and in that case only, it is accurate to speak of an act forbidden by statute as an actionable wrong. *Taylor* v. *Thomas*, 77 N. H. 410, 415.

"And that is also true of a negligent act. To entitle one to recover for such an act he must show not only that it was negligent, but also that he has been injured or damaged by it.

"In fact there is no difference between an action to recover for

an injury caused by the breach of a duty imposed by statute and one imposed by the common law. . . .

"In short, if one is injured or damaged by another's illegal act it makes no difference in so far as his rights are concerned whether the rule which forbids the act is a statute or rule of the common law (*Osgood* v. *Maxwell*, 78 N. H. 35), for in either case the act is illegal and for th'at reason actionable." (*Ib.*, 151.)

It thus appears that there is a substantial conflict in our decisions, and that the later cases, where the matter has been discussed, have returned to the early rule of *Brooks* v. *Hart*, 14 N. H. 307. Those expressing a different view contain no reasoning upon the subject, and in the main are rested upon the citation of cases which do not support the proposition laid down. Upon authority as it now stands, the rule stated in *Hanscomb* v. *Goodale*, 81 N. H. 150, must be taken to be the law of this state. In so far as *Lane* v. *Concord*, 70 N. H. 485; *Clough* v. *Company*, 75 N. H. 84; and *Page* v. *Brooks*, 79 N. H. 70, hold to the contrary, they must be regarded as overruled.

The idea that proof of causal violation is evidence of fault to be considered by the jury finds countenance in cases elsewhere. A manifest feeling that the violation must be entitled to some consideration had often led to that irrational result. It has frequently been stated in answer to the query whether the wrongdoer was to be absolved from his illegal act because the question arose in a civil suit. The cases are barren of any suggestion as to how the jury are to use such evidence. Is it to be treated like the testimony of an expert, advising the jury what the conduct of the average person is? May they find the existence of fault in the act of disobedience because obedience is the part of prudence? May they find it not to be a legal fault because they think that the average man disobeys the law? May they find one way or the other, as they view the desirability of enforcing the law? No answer to these and similar queries is to be found. The middle ground assumed in these cases is unsupported either by logic or by precedent drawn from other branches of the law.

The before quoted passage in *Brooks* v. *Hart*, 14 N. H. 307, 313, states the true rule. "The question of negligence or fault, under the statute, is one of law, arising upon the facts proved, and not a question of fact to be determined by the jury." The matter is well expressed in the dissenting opinion of *O'Brien*, J., in *Marino* v. *Lehmaier*, 173 N. Y. 530. "It will not do to say that there was a question of fact, for there was none. There was no dispute about

the violation of the statute, and its violation proved negligence or it did not. If it did, then the plaintiff was entitled to recover as matter of law, and there was nothing for the jury to do except to assess the damages. If it did not prove negligence then the action failed."

It is a misconception of the effect of a statute to treat the violation as evidence of negligence. The statutory test is an exact one, the act is made a wrong. It differs fundamentally from negligence, where the test of ordinary conduct is to be applied. The legislative declaration leaves no room for the operation of such a theory of responsibility.

It is of course true, as suggested in *Bresnehan* v. *Gove*, 71 N. H. 236, and *Hanscomb* v. *Goodale*, 81 N. H. 150, that there may be evidentiary questions involved in the case, as to whether the act was causal in fact and whether fault of the other party contributed. Some of the cases can be explained upon this ground. But with those matters settled, there is no valid reason for the conclusion that there is a further question of fact for the jury.

The issue of the existence or non-existence of negligence being one of fact is of course for the jury. But when for a "case in hand a definite *rule of law*, more precise and concrete, has been framed for determining the effect of the person's conduct," the rule of law concludes the matter and there is no issue of fact for the jury. Such rules "are constantly laid down for various situations." 5 Wig., Ev., s. 2552; Holmes, Common Law, 150.

At common law, speed limit is governed by the rule of reasonable care, and failure to comply with the rule is negligence. No judge has any hesitation in telling the jury that if they find that the party failed to use reasonable care it follows as matter of law that he was negligent, or in other words that his fault is established. When the statute makes the speed limit five miles an hour, the introduction of a new measure for lawfulness of conduct does not change the relative functions of the judge and the jury. There is no sound reason why the jury should not be instructed in the latter case, as well as in the former, that if a failure to act according to the standard set by law is proved, the fault of the party is established.

There are but two positions concerning the subject which appear to be tenable. Either the violation is a legal wrong as to a private party injured thereby, or else it is wholly immaterial to his rights. It seems too plain for argument that the legislature never intended the latter result as to the statute involved here.

The rule clearly stated in *Hanscomb* v. *Goodale*, 81 N. H. 150, is to be followed. The causal violation of a legal rule of conduct is actionable. This conclusion is in harmony with the great weight of authority elsewhere. See 20 R. C. L. 38, where many of the cases are collected.

If the plaintiff's illegal act was causal, he cannot recover. Upon the issue of causation the plaintiff's position is that failure to procure a license is the fault, and that lack of license is not a material factor in the situation. But the latter proposition is not decisive, if the premise is untenable.

The question thus raised is not really one of causation. It is evident that the plaintiff's act of driving the car was causal, as a matter of logic. "Causation, as distinguished from duty, is purely a matter of producing a subsequent event." *Derosier* v. *Company*, 81 N. H. 451, 463. The issue here is whether the law makes the plaintiff accountable for such causation.

Because much has been said about proximate cause as a test for responsibility, it has come to be more or less frequently assumed that a true question of logic is involved. But all antecedents are causal in the logical sense, and the issue as to what of these are legal or actionable causes is often decided upon grounds that do not depend upon rational deductions. The moral element (*Derosier* v. *Company*, *supra*) and the inherent justice, sometimes called reasonableness (*Cavanaugh* v. *Railroad*, 76 N. H. 68, 72; *McCaffrey* v. *Company*, 80 N. H. 45, 52; *Stanley* v. *Kimball*, 80 N. H. 431, 435; *Tullgren* v. *Company*, 82 N. H. 268, 271), of the imposition of accountability have often been the controlling factors.

When the question is one of common-law liability, the application or rejection of these elements is for the court which declares the law. But when the issue is one of statutory accountability, the court is no longer concerned with these matters. It being the function of the legislature to declare the law, if it so wills, the enactment settles the question, and it only remains for the court to apply the new rule of accountability to the facts, and to adjust relevant common-law rules to the new situation.

The legislature laid down a rule of conduct. It has not said merely that whoever drives without a license shall be punished by the state. In addition to that provision it has enacted another, specifically forbidding the act of driving. Why driving was forbidden is immaterial upon the issue of causation by driving. For a sufficient reason, the legislature prohibited the act. It did this

to protect lawful travelers. The reason for the prohibition, and the object of it, are not to be confounded with the terms thereof. The reason being sufficient to sustain the act, and the object the protection of individual rights, those topics are disposed of; and the only issue left for determination is whether the rule laid down was violated in a causal way.

The argument that lack of license is not causal, and that therefore the violation is immaterial, ignores the terms of the statute, puts the facts upon which the prohibition depends in the place· of the things prohibited, and thus reaches a conclusion based upon false premises.

The reasons for the prohibition may not be conclusive. The better reason may be against it, but that does not warrant a conclusion, contrary to the fact, that the prohibited act was not causal. The applicability of the reasons inducing the rule may be remote, and still a violation of the rule will be proximate causation. It is not a "question of remoteness of consequence, but a question of definition of duty." *Jeremiah Smith*, 25 Harv. Law Rev. 125. It is only by putting the reasons for the rule in place of the rule laid down that the conclusion that the violation is not causal can be reached.

Undoubtedly, the reasons for the enactment are of importance in determining whether the statute was intended to affect private rights. But when that problem has been answered affirmatively, the court has no power to emasculate the statute because of an opinion that the rule does not harmonize with common-law principles. The arguments advanced come to this: It ought not to be concluded that an unlicensed driver is a wrongdoer as to other travelers; therefore violation of a statute which prohibits his driving is not causal as to them. This leaves out of consideration the fact that the legislature has dealt with the questions of remoteness, materiality and moral accountability in a practical way. It has substituted a positive test for accountability. It has made a cause in fact a legal cause.

Driving is not prohibited, under this section, because the party does not have a certain paper in his pocket, nor because he has not paid the state two dollars. Those matters do not concern his fitness to operate. *Kiely* v. *Ragali*, 93 Conn. 454, 458. They are separately provided for elsewhere. *s.* 7. The reason for this prohibition is that driving by the unfit is dangerous. He is classed with the unfit because he has not taken the prescribed method to establish his fitness in advance. It has seemed advisable to the legislature

that the public be protected by the settlement of this matter before harm is done, rather than to leave it to be tried out after an accident has happened. It is a reasonable preventive and remedial measure.

The statement that operation is prohibited because of lack of license touches only the surface of the matter. That is what may be called the mechanics of the situation. The prohibition is because he has not shown that he is fit; and the rule of law is that until fitness is shown in the prescribed way operation is forbidden.

"Whether such a rule should be laid down is a question of the detailed substantive law appropriate to the situation; and, wherever such a rule of law appears, the matter ceases, as of course, to that extent, to be a question of fact for the jury." 5 Wig., Ev., s. 2552.

The plaintiff's argument would sustain the instruction which was held to be erroneous in *Hanscomb* v. *Goodale*, 81 N. H. 150. The plaintiff's act was illegal because he was unlicensed, in the same way that Hanscomb's riding was illegal because it exceeded ten miles an hour. Neither would have been a legal fault, *per se*, but for the legislative declaration making it so. The object there as here was to prevent dangerous driving. In each instance a prohibition was enacted. But as not all unlicensed driving is dangerous, neither is all bicycle riding at over ten miles an hour. The illegal speed may not have been a fault, in the common-law sense of failure to use care toward the other party, yet it was an actionable legal wrong. Because the act is frequently negligent and often harmful, a new rule of conduct was established. In each case the legislature passed its judgment upon a certain act. Concluding that such conduct was likely to produce untoward results, it prohibited the act; and the common-law tests of accountability were abolished as to that situation.

Attention has been called to the fact that the statutes involved in *Brooks* v. *Hart*, 14 N. H. 307, and *Hanscomb* v. *Goodale*, *supra*, contain express provisions for civil liability. No reliance was put upon that provision in either decision, and there was no such enactment in the statute involved in *Osgood* v. *Maxwell*, 78 N. H. 35. Undoubtedly such a declaration is conclusive upon the issue of legislative intent, but its absence does not negative the existence of a like purpose. The nature of the evil sought to be remedied, the relevancy of the rule laid down to private rights, and the form of the enactment, are all evidence upon the issue of legislative design. The imposition of a penalty for disobedience, and the absence of

any provision for civil liability, have never been considered to show that the provisions for, train signals were not applicable to civil suits.

It is argued that petty legislative regulations are becoming so numerous that they ought not to be deemed to affect private rights. *Bourne* v. *Whitman*, 209 Mass. 155. Manifestly, the remedy for grievance in this respect lies with the legislature alone. It may be conceded that the argument against over-legislation is logical, convincing and irrefutable, yet our form of government does not point to judicial nullification as a corrective. Moreover, it is matter of common knowledge that more rather than less restriction upon motor vehicle operation is needed for the protection of the traveling public. "The congestion upon highways has become so great that the general public safety seems to demand that there be no relaxation of the requirement of due care on the part of all travellers." *Brown* v. *Alter*, 251 Mass. 23.

The mistake has sometimes been made of going behind the legislative declaration of law, and treating as merely directory that which was intended to be an essential limitation of private conduct. Because an unlicensed driver was in fact competent, or might be so, it has been held that the prohibition might be disregarded, upon the ground that the violation was not causal. This amounts to substituting the judgment of the court for that of the legislature in fixing the line between legal and illegal conduct. As has been said, the true question is one of legislative intent; and when the evident purpose was to protect individual rights, the wrong is one of which an individual may complain.

It may be conceded that in many instances the unlicensed driver is as fit as the licensed. But in order to keep out the unfit the legislature made this positive limitation of right. Its reasonableness is beyond dispute. There is no other practical way to accomplish the desired result. The fit can protect themselves by procuring a license. If they do not, they cannot complain of being classed with the unfit.

It would have been no answer for the plaintiff in *Albertson & Co.* v. *Shenton*, 78 N. H. 216, or the defendant in *Karamanou* v. *Company*, 80 N. H. 420, to have shown qualifications requiring the issuance of a license, if applied for. Their status was fixed by the statute, and that with reference to the protection of those dealt with. So here, the legislature saw fit to impose a status upon the plaintiff's class for the protection of those using the highways. It is no more an answer for the plaintiff to say that he drove prudently than it would

have been for Albertson and the Green company to aver that they dealt honestly. It has seemed desirable to the legislature to provide that these matters will not be investigated.

The situation is like that created by what is called a conclusive presumption. "Wherever from one fact another is conclusively presumed, in the sense that the opponent is absolutely precluded from showing by any evidence that the second fact does not exist, the rule really provides that, where the first fact is shown to exist, the second fact's existence is wholly immaterial for the purpose of the proponent's case; and to provide this is to make a rule of substantive law. . . ." 5 Wig., Ev., s. 2492. With the wisdom or unwisdom of such a provision the court has no concern.

The plaintiff's act in driving without a license is a wrong against third parties because the legislature has so provided. There being some reason for such an enactment, the court has no power to annul it by reasoning that in many instances the test does not produce results in harmony with common-law ideas of responsibility. The creation of new rights or responsibilities is not to be condemned because it changes the old order.

Appeal is made to authorities in other jurisdictions. It is correctly said that in a large number of the states it has been held that lack of license to drive is not a fault as to other private parties. Examination of these cases shows that little attention has been given to the controlling factor of legislative intent. In most of them there is no mention of the subject. And there is great variance in the grounds upon which the non-liability is put. A general underlying idea seems to be that lack of license is immaterial to the protection of other travelers, although in some jurisdictions it is held to be evidence of fault. The cases are collected in the notes in 16 A. L. R. 1108; 35 A. L. R. 62; 38 A. L. R. 1038; 43 A. L. R. 1153.

As before stated, it appears to us that one error in this conclusion lies in its failure to give consideration to legislative purpose. Another vital mistake is that when going behind the act prohibited the search for the reason therefor has stopped short at the issuance or non-issuance of a license, without pursuing the legislative train of thought to its real source. The moving purpose was the protection of travelers. The license provision was but a means to that end and not an end in itself.

Content with the *reductio ad absurdum* that because license or no license is quite immaterial therefore lack of license cannot be ground for complaint, the object to be attained by the law has been entirely

overlooked. It may be that the statutes in other states are merely revenue measures, and do not express any purpose to protect travelers. Some of the cases proceed on that ground. But whatever the form of the statute, decisions thereunder which do not consider the matters deemed of importance here are not to be followed as authority upon the ultimate question.

The whole matter resolves itself into a question of legislative intent. Because of the foregoing considerations, it is thought that the legislative purposes are indicated in the statute with sufficient certainty. A leading object was the protection of persons using the highway. Prohibition of unlicensed driving was thought to be of sufficient importance, as a means to that end, to call for its adoption as a rule of conduct, the violation of which would render the offender accountable for the damage resulting from his illegal act.

The plaintiff's act of operating a car was causal in the strictest sense. It was not his mere presence in the highway, but his operation of the car, which brought him into the collision.

There was no evidence to warrant a verdict for the plaintiff upon the ground that the defendant could have avoided the accident after its servants "knew of the dangerous situation." *Osgood* v. *Maxwell*, 78 N. H. 35, 39. The only evidence of when he was seen is the testimony of the engineer, who fixed the plaintiff's position as fifteen feet from the point of collision. The claim is that a warning whistle then given would have caused the plaintiff to stop in season to avoid the accident. Assuming the speed of the automobile most favorable to the plaintiff (eight miles an hour) its rate of progress was twelve feet a second and it would require six or eight feet for a stop. It had not exceeding nine feet to go before the brakes must be applied. This would give not over three-fourths of a second for the engineer to decide upon his course of action and to act, for the whistle to respond to his action and the plaintiff to hear and act upon the warning. It is not sufficient. *Collette* v. *Railroad, ante,* 210.

*Exception overruled.*

Snow, J., was absent: the others concurred.