Merrimack,
Feb. 7, 1939.⎱ No. 3014.

GLADYS N. BOWDLER

*v.*

ST. JOHNSBURY TRUCKING COMPANY *& a.*

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the plaintiff.

*Demond, Woodworth, Sulloway, Piper & Jones* and *James B. Godfrey* (*Mr. Godfrey* orally), for the defendants.

WOODBURY, J. At the former transfer of this case there was no direct evidence as to what if any control the plaintiff had over the manner in which Heartz drove her car. Otherwise the facts then considered were the same as those now before us and a majority of this court held that they were not sufficient to invoke the civil liability imposed by the licensing statute. P. L., c. 101, s. 9. The defendants now contend that this evidence of control, although there is nothing to show that the control testified to was any greater in extent than that which might ordinarily be inferred from the relation of a host-owner to his guest-chauffeur, compels a difference in result. Their reasoning is that this definite evidence of the plaintiff's control over the driving of her friend established the relationship of master and servant between them under the rule laid down in *McCarthy* v. *Souther*, 83 N. H. 29, and, the servant being barred from recovery under the rule of *Johnson* v. *Railroad*, 83 N. H. 350, the master is precluded from recovery by the doctrine of *respondeat superior*.

This contention raises the question of the nature, scope and extent of the civil liability imposed by the legislature when it enacted the licensing statute, and this question is one of statutory construction. *Johnson* v. *Railroad*, 83 N. H. 350; *Clark* v. *Hampton*, 83 N. H. 524, 529; *L'Esperance* v. *Sherburne*, 85 N. H. 103, 107; *Vidal* v. *Errol*, 86 N. H. 1; *Bowdler* v. *Company*, 88 N. H. 331. As such, the problem before us is to determine the extent of the civil liability which the legislature intended to impose when it provided, with exceptions not here material, that "No person shall operate a motor vehicle upon any way in this state, unless licensed under the provisions of this title, or permit such a vehicle owned or controlled by him to be so operated by a person not so licensed . . . ," and, for violation thereof attached a criminal penalty. P. L., c. 101, s. 9.

Before considering this question it will be of assistance to summarize the facts which raise it. At the time of the accident the plaintiff, who was duly licensed, was not herself operating her car. She was riding in it, but had relinquished its operation to a friend of several years standing who, she reasonably but erroneously believed, had a license to operate motor vehicles upon the ways of this state. At the former transfer we held that these facts were insufficient to invoke the civil liability imposed by the licensing statute under the rule of *Johnson* v. *Railroad*, *supra*, and this conclusion, under familiar principles, is not now open for reconsideration. *Smith* v. *Railroad*, 88 N. H. 430, 432 and cases cited.

In addition to the facts previously considered it now appears in explicit language that the plaintiff had retained the right to control the manner in which her friend drove the car. In reality, because of the control inherent in the relationship of a host to his driver-guest, this evidence adds nothing to the facts previously considered. But it is sufficient to show that the relationship of master and servant subsisted between the plaintiff and her driver, (*McCarthy* v. *Souther*, *supra; Hutchins* v. *Company*, 89 N. H. 79) and, since it came from the plaintiff and relates to a matter about which she could not be mistaken, we must accept it as true. *Harlow* v. *Leclair*, 82 N. H. 506. It is not, however, sufficient to invoke the statutory prohibition against the employment for hire of a chauffeur or operator unless the latter holds a chauffeur's license (P. L., *c.* 101, *s.* 15), because the record in the case contains no evidence of any hiring. The sole question of statutory construction before us, then, is whether or not the legislature in forbidding the operation of motor vehicles by unlicensed operators intended to classify as such an operator one who innocently drives his car through the agency of an unlicensed volunteer.

In our opinion this question must be answered in the negative. The reason for this is that the liability imposed upon a master for the faults of his servant by the doctrine of *respondeat superior* is a vicarious one not based upon any actual wrongdoing on the master's part, and, at the former transfer of this case, it was held by a majority of this court that the provisions of the licensing statute were not comprehensive enough to warrant the inference that the legislature intended by it to press its policy of highway safety through licensing to the ultimate extent of depriving innocent persons of their civil rights. In other words we then held that the *Johnson* case goes to the verge of the law.

The dissenting opinion at the prior transfer shows that other views may be entertained as to this legislative intention. However, in the interest of continuity of interpretation and also because of the cogency of the reasoning of the majority opinion, we believe that the view there expressed should be adhered to. That reasoning does not now require recapitulation. But, in addition thereto it is to be noted that with the exception of persons under sixteen, persons guilty of reckless (P. L., *c.* 102, *s.* 12) or drunken (*Ib.* 15) driving, conviction for the third time in any calendar year of some other offenses (*Ib.* 29) and the use of an automobile in the larceny of agricultural products, (P. L., *c.* 380, *s.* 8), the legislature has made no specific rules to deter-

mine who shall or shall not be entitled to a license to drive. Aside from the above, the question of the mental, moral, physical and emotional qualifications for a license is committed to the discretion of whoever may from time to time occupy the office of Commissioner of Motor Vehicles. It seems to us clear that if the legislature had intended to promulgate a complete and fully integrated program of safety by the requirement of a license it would have implemented that program with definite provisions for some sort of a physical or psychological examination, and not left so fundamental a matter as a licensee's fitness to drive to the discretion of an appointed official.

Further support for the view that the legislature did not intend to carry this policy of safety to the extent of punishing those blameless as a matter of fact is to be found in the reasoning of this court in its other opinions interpretative of the licensing statute. In *Johnson* v. *Railroad*, 83 N. H. 350, the facts were that the plaintiff, who was without a driver's license, was operating his car when it collided with a locomotive at a grade crossing. There was no question but that he was then driving in violation of the licensing statute and this court held that the legislature in enacting that statute intended to classify as wrongdoers those who knowingly violated its terms, and, if the unlicensed driving was causal, to deny to such persons the right to recover for injuries negligently inflicted upon them while so operating motor vehicles upon the ways of this state. The question of the legal rights of persons other than those actually driving without a license and in violation of the statute was not involved and was expressly left unconsidered.

This latter question did arise, however, in *Vidal* v. *Errol*, 86 N. H. 1. The evidence in that case indicated that the plaintiff's intestate was killed when an automobile in which she was riding as a guest-passenger toppled over an unrailed embankment beside a highway in the defendant town. At the time of the accident the car was being driven, with the consent of its owner who was present, by one who did not then hold an operator's license. There was no evidence that the decedent knew of the unlicensed status of her driver. In holding that under these circumstances the rule of the *Johnson* case did not apply this court said in summary, (*Ib.* 13), "that the deceased cannot be classed as a wrongdoer by reason of the fact that she was riding with an unlicensed driver and hence the plaintiff cannot be denied a recovery merely because the driver was not licensed." In this opinion it is further said that "the act of the deceased in riding with him [the unlicensed driver] cannot be regarded as a legal

fault in the absence of a legislative declaration making it so," and, since the statute mentions only unlicensed drivers and owners or those in control of automobiles who permit them to be driven by unlicensed drivers, "Accepted canons of statutory construction point to the conclusion that the expression of this limited purpose precludes the inference that the legislature intended the statute to have the broader effect of determining the rights of other persons not referred to therein." *Ib.* 6. For other recent instances of the application of this principle of statutory construction see *Howe* v. *Howe*, 87 N. H. 338, 341, and *State* v. *Goonan*, 89 N. H. 528.

In our previous opinion in the instant case, conformably with the *Johnson* and *Vidal* cases, we held that the legislature in enacting the statute had evinced no intention to include within its terms any persons other than those named therein and that the plaintiff was not such a person for the reason that the word "permit," as used in the statute, was intended by the legislature to refer only to owners who knowingly allow their cars to be operated by unlicensed drivers. In other words, we interpreted the statute in such a way as to exclude from the legislative mind any intention to deprive of civil rights a person who, through reasonable ignorance, allows an unlicensed operator to drive his car. This conclusion was based in part upon the view that the legislative purpose in enacting the statute was adequately served by confining its application to those and only to those who have personally violated its terms, and in part upon the view that had the legislature intended to impose a liability for conduct blameless as a matter of fact it would have said so in explicit language. These reasons are fully as cogent in the case of a master innocent of actual wrongdoing as they are in the case of an equally innocent bailor. Logical consistency with the reasoning of the opinion at the former transfer compels the conclusion that it was not the intent of the legislature in enacting this statute to impose a civil liability upon a master for the unlicensed driving of his servant when the circumstances are such as to indicate that the master was free from any actual personal wrongdoing in the premises.

It is objected that this conclusion with respect to the licensing statute commits us to a similar conclusion with respect to the speed law (Laws 1927, *c.* 76, *s.* 2) the law of the road (P. L., *c.* 103, *s.* 16) and other like statutes which regulate the manner in which motor vehicles shall be operated upon the ways of the State. We neither concede that it does nor contend that it should. Statutes of the latter sort have for their sole object the promotion of highway safety.

There is no secondary revenue objective. They substitute an express legislative standard of conduct for the common-law standard of due care; they provide a new rule of accountability for the old rule of the common law. Both the statutory and the common-law rules are regulatory of the manner of driving and the doctrine of *respondeat superior* is properly as much a part of the rule which originates in the statute as it was of the former rule of the common law which the statute superseded. From the nature and purpose of statutes of this sort it seems evident that the legislature in passing them did not intend to affect the common-law accountability of a master for his servant's act.

The licensing statute, on the other hand, is of a different sort. It is not in substitution for an older standard of conduct but it creates a new one. It makes wrongful an act which "would not 'have been a legal fault, *per se*, but for the legislative declaration making it so.'" *Vidal* v. *Errol*, 86 N. H. 1, 6, citing *Johnson* v. *Railroad*, 83 N. H. 350, 361. By it a driver is classified as unfit not because of the way he operates the car under his control but "because he has not taken the prescribed method to establish his fitness in advance." *Johnson* v. *Railroad, supra* 360. From this difference between the licensing statute and those which strictly speaking regulate the manner of driving, and from the fact that the legislature has seen fit to make specific provision for the liability of a master for the unlicensed driving of his servant only in situations of actual hiring, (P. L., *c.* 101, *s.* 15), we do not regard it as inconsistent to hold it was the legislative intention that the doctrine of *respondeat superior* should be applied when appropriate in conjunction with statutes which are regulatory of the manner of driving but that it should not be applied in conjunction with the licensing statute.

This is not to say that the licensing statute repeals or in any way alters the common-law rule which makes a master accountable for his servant's acts. All that we hold is that the legislature in enacting the licensing statute indicated its intention to impose the civil liability which is thereby created upon only the particular individual who is personally guilty of violating its terms.

Under the rule of *Disalets* v. *Company*, 74 N. H. 440, 445, the order must be

*Judgment on the verdict.*

BRANCH, J., was absent; PAGE, J., concurred; ALLEN, C. J. and MARBLE, J., dissented.