ANTHONY VASSILLION *v.* JOHN J. SULLIVAN & a.

VIRGINIA VASSILLION *v.* SAME.

98

*Robert W. Upton* and *Peter J. King* (*Mr. Upton* orally), for the plaintiffs.

*Sulloway, Piper, Jones, Hollis & Godfrey* (*Mr. Piper* orally), for the defendants.

BRANCH, J.   Although the defendants contend that the case of *Mandell* v. *Company, ante,* 1, is not decisive of the present case, a matter hereinafter considered, their principal argument has consisted of an attempt to show that that case was unwisely decided and should not be applied "in the decision of this or other cases coming before this Court." The argument upon this point has been so solemnly and so vigorously pressed that we have taken occasion to re-examine the grounds of our decision in the *Mandell* case with the following result.

The controversy involves the interpretation of P. L., *c.* 101, *s.* 9, and Laws, 1937, *c.* 69, *s.* 1, which now appear as R. L., *c.* 117, *s.* 9. Section 9 of chapter 101 of the Public Laws reads as follows: "No person shall operate a motor vehicle upon any way in this state unless licensed under the provisions of this title, or permit such a vehicle owned or controlled by him to be so operated by a person not so licensed, except as otherwise herein provided." By the act of 1937, an amendment was added to this section which provides as follows: "If any person shall operate such a motor vehicle in violation of this section such violation in any civil action shall be *prima facie* evidence of his unfitness to operate a motor vehicle."

The above statute, as it existed before the amendment, was considered in *Johnson* v. *Railroad,* 83 N. H. 350, and it was there held that an unlicensed driver was barred from recovery for injuries sustained by him upon a highway, since the act of driving without a license was specifically forbidden by the statute and was causal as a matter of law of any injury thereby sustained. In the *Mandell* case we had occasion to consider the effect of the amendment of 1937, and held that it changed the basis of liability in such cases. Liability was found to depend no longer on the violation of a statutory rule of

conduct (driving without a license), but upon fitness to drive, which was left as a matter for factual determination in each case. In that opinion (*p. 3*) we noted the fact that "it is a matter of common knowledge that the rule in the *Johnson* case has been freely criticised as unduly harsh and unrealistic. It is fairly to be thought that the amendment of 1937 was adopted with this criticism in mind."

Defendants argue that the decision in the *Johnson* case consisted of two branches; 1, holding that a new rule of conduct had been established by the statute forbidding the operation of a motor vehicle by an unlicensed driver, and 2, holding upon common-law principles that operation by an unlicensed driver was causal as a matter of law. We are told that whatever criticism of the *Johnson* case there may have been was directed against the first of these propositions, which resulted in classing the competent but unlicensed driver with the unfit as set forth in the following passage: "The reason for this prohibition is that driving by the unfit is dangerous. He is classed with the unfit because he has not taken the prescribed method to establish his fitness in advance. It has seemed advisable to the legislature that the public be protected by the settlement of this matter before harm is done, rather than to leave it to be tried out after an accident has happened. It is a reasonable preventive and remedial measure." *Johnson* v. *Railroad, supra*, 350, 360, 361.

It is further stated that "so far as we know, no criticism was ever addressed to the court's further holding in that case that operation by an unfit driver (not lack of a license) was causal as matter of law." It is, therefore, argued that the effect of the amending statute of 1937 was merely to correct the supposed injustice of classifying competent but unlicensed drivers with the unfit, leaving untouched the other branch of the *Johnson* decision; namely, that operation by an unlicensed driver is causal as a matter of law.

With this speculation as to the purpose of the Legislature, we are unable to agree. We believe that the criticism of the *Johnson* case has been directed to its net result rather than to the legal machinery by which that result was reached. That case, as generally understood, precluded an unlicensed driver from recovering damages for any injury sustained on the highway. We reaffirm the statement in the *Mandell* case that it was the purpose of the Legislature in the amending statute to relax "the rigidity of the rule in the *Johnson* case and to substitute factual considerations for conclusions of law." *Mandell* v. *Company, supra*, 3.

It is said that the **first branch** of the court's decision in the *Johnson*

case is based upon interpretation of the statute, while the second "involved only general principles of the common law. It involved no statutory interpretation." This appears to be a perversion of the reasoning in the *Johnson* case. In that opinion, when commenting upon the case of *Hanscomb* v. *Goodale*, 81 N. H. 150, the court said, *(p.* 361), "In each case the legislature passed its judgment upon a certain act. Concluding that such conduct was likely to produce untoward results, it prohibited the act; and the common-law tests of accountability were abolished as to that situation." And on page 364, "A leading object was the protection of persons using the highway. Prohibition of unlicensed driving was thought to be of sufficient importance, as a means to that end, to call for its adoption as a rule of conduct, the violation of which would render the offender accountable for the damage resulting from his illegal act."

Among "the common-law tests of accountability" which were said in the *Johnson* case to have been "abolished" by the Legislature, are those rules which determine the "causal relation necessary to the existence of liability for another's harm." Restatement, Torts, *c.* 16, *s.* 430. It is evident, therefore, that both branches of the *Johnson* decision depended upon the interpretation of the statute and were thought to be justified by the overwhelming weight of the legislative purpose to protect travelers upon the highway. The rule that the operation by an unfit driver is causal as a matter of law, was a corollary of the rule that an unlicensed driver is unfit as a matter of law. By the amending statute, the Legislature clearly indicated a less imperative protective purpose for the benefit of other travelers and saw fit to relax the rigid rule that an unlicensed driver is unfit as a matter of law. It follows that the corollary of that rule; *i.e.,* that "the common-law tests of accountability were abolished as to that situation" was left without support and must be regarded as repealed.

It was said in the *Mandell* case that in *Straut* v. *Carpenter*, 92 N. H. 123, the court did not inquire into the extent to which the law as declared in the *Johnson* case was modified by the 1937 amendment. Having twice considered this question at length, we think we are now in a position to answer it as follows. By force of the 1937 statute, the *Johnson* case is overruled in its entirety.

The overruling of this decision by reason of the statute of 1937 has the further effect of restoring to full operation two principles of law which, although firmly established by the decisions of this court, have been somewhat obscured by the *Johnson* case.

1. "The fact that the plaintiff is a trespasser, or violator of the law, does not of itself discharge another from the observance of due and proper care towards him; neither will it necessarily preclude him from a recovery against a party guilty of negligence." *Norris* v. *Litchfield*, 35 N. H. 271; *State* v. *Railroad*, 52 N. H. 528, 555; *Caher* v. *Railway*, 75 N. H. 125, 127; *Lindell* v. *Stone*, 77 N. H. 582, 585; *Vidal* v. *Errol*, 86 N. H. 1, 4.

2. Failure to observe a statutory requirement is "immaterial unless it contributed to the accident." *Judd* v. *Perkins*, 83 N. H. 39, 42; *Flynn* v. *Gordon*, 86 N. H. 198, 200; *Hanscomb* v. *Goodale*, 81 N. H. 150; *Osgood* v. *Maxwell*, 78 N. H. 35; *Brember* v. *Jones*, 67 N. H. 374, 377.

As a necessary result of our present decision, the first part of R. L., *c.* 117, *s.* 9, prohibiting unlicensed persons from operating motor vehicles upon the highways of this State, is reduced to the status of a purely criminal provision. The effect of a violation of this provision in a civil case is governed entirely by the amendment of 1937. The effect of that act was to place the crime of driving without a license upon precisely the same footing as operating at an excessive speed, in regard to which the law then provided that "in civil actions this evidence [of speeds in excess of certain limits] shall be *prima facie* only." P. L., *c.* 103, *s.* 18. The analogy between the two situations is so striking that it must be assumed that the Legislature intended the two statutes should be given a similar application.

The argument by which the defendant seeks to distinguish the present case from *Mandell* v. *Company* is as follows: The driver of the plaintiff's car "came within the absolute prohibition of the statute forbidding the issuance of licenses to minors under the age of sixteen . . . [He] was unfit as matter of law, and the finding that his unfitness was causal is compelled on common law principles as it was in the *Johnson* case." This argument appears to be based upon the assumption that the rule of the *Johnson* case is so salutary and desirable that it ought to be retained in all cases where the drawing of nice distinctions appears to make this possible. As we have perhaps indicated above, the assumption is without foundation and the desired result is impossible.

The attitude of the court toward the *Johnson* case was clearly indicated in *Vidal* v. *Errol*, 86 N. H. 1; the two opinions in *Bowdler* v. *Company*, 88 N. H. 331 and 90 N. H. 68; and *Cutler* v. *Young*, 90 N. H. 203. In the second *Bowdler* case *supra*, it was held that "the *Johnson* case goes to the verge of the law," and in *Cutler* v. *Young*,

*supra,* it was specifically stated that "we are not disposed to give it further extension."

Since the *Johnson* case is "overruled in its entirety" it is a barren speculation to consider whether stronger reasons formerly existed for applying the rule of that case to some unlicensed drivers than to others. This conclusion is strictly in accord with the language of the amending statute which applies to "any person [who] shall operate a motor vehicle in violation of this section." The act does not undertake to distinguish between persons under sixteen years of age and others who violate its provisions, and it is difficult to conceive of any ground upon which the court could undertake to make such a distinction.

Finally, the defendant's waiver of "any claim that the 15-year old driver of the Vassillion automobile was guilty of any negligence in the actual handling of the automobile at the time of the accident" wholly precludes the adoption of their present argument. Although it must be found that Peter Vassillion violated the statute by operating his father's car, such conduct "would be immaterial unless it contributed to the accident." *Judd* v. *Perkins*, 83 N. H. 39, 42, and cases cited. The evidence indicated that the Vassillion car was proceeding within a few inches of the right-hand rail of the bridge at the time of the accident. No claim was made that the driver could have done anything more or different from what he did do to avoid the collision. This is the obvious meaning of the defendant's waiver. The only effect of Peter's unlicensed driving was to bring the car to the point of the accident at the time of the accident: in other words, to create a condition of the accident. By no application of the ordinary rules of causation could Peter's driving be regarded as a cause of the accident, and this consideration alone would call for the rejection of the defendant's argument.

*Judgments on the verdicts.*

**All concurred.**