Rockingham
No. 78-109

KATHRYN ANN (ORBEN) DUNBECK

v.

EXETER & HAMPTON ELECTRIC COMPANY

January 12, 1979

*Nedved & Senn*, of Nashua (*Howard J. Nedved* orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Kohls*, of Manchester (*Theodore Wadleigh* orally), for the defendant.

BOIS, J.   This is a tort action to recover damages for personal injuries sustained when a helicopter crashed at Long Pond in Kingston, a body of water more than ten acres in size. Trial by jury with a view resulted in a verdict for the defendant. All questions of law raised by plaintiff's exceptions were reserved and transferred by *Bean*, J.

The only substantial question presented for determination is whether the trial court erred in excluding from evidence all reference to RSA 371:17 (including evidence allegedly favorable to her claim contained in a record of the New Hampshire Public Utilities Commission, 35 N.H.P.U.C.R. 220–21 (1953)), and RSA 422-B:1 and :13. We find no error and affirm.

The defendant maintained two sets of power lines which had previously been erected over and across the southern end of Long Pond.

The primary line, consisting of two strands, and approximately 350 feet in length, was 33 feet above the surface of the water. The secondary line, consisting of one strand and located 300 feet further south, was 27 feet above the water. The defendant had petitioned the public utilities commission, pursuant to RSA 371:17, for a license for the primary line. Plaintiff argued orally that, incidental to the licensing proceedings, the aeronautics commission had been notified of the installation in compliance with RSA 422-B:13. The defendant conceded that it had installed the second line without complying with either statute.

On August 22, 1967, the plaintiff was a passenger in a helicopter piloted by her instructor and friend, James J. Salvatore. The aircraft had no navigational instruments. Despite good weather and clear visibility, the pilot lost his way. The plaintiff sighted a landmark and instructed the pilot how to return. Instead of following her directions, the pilot made two low passes over the north end of Long Pond. He turned and swept down the length of the pond at a low altitude. It was stipulated that the helicopter was at an unauthorized place and height at the time of the accident.

The helicopter, while flying at low altitude, broke the primary line. There was evidence that the broken wire wrapped itself around the helicopter's rotor. The craft then struck the secondary line, started to climb, hit the top of trees, and fell back into the water. The pilot was killed.

The plaintiff relies principally upon her argument that RSA ch. 422-B is a public safety statute which sets a standard of care for those to whom it applies. She argues that the defendant's violation of the statute was negligence per se. She further maintains that such negligence was the proximate cause of her injury.

The plaintiff also contends that the defendant's failure to comply with the requirements of RSA 371:17 when installing the secondary line made "the second wire a trespasser . . . that it is a violation of a statute, and that . . . this constitutes negligence on the part of the defendant . . . which caused or contributed to cause her injuries." We are not persuaded by either of the plaintiff's arguments.

RSA ch. 422-B in pertinent part reads as follows:

> Section 1. Declaration of purpose. The safety, welfare and protection of persons . . . require that the navigable air space . . . be maintained in a reasonably unobstructed condition. . . . To that end, the location, height, and identification

of structures and the use of land thereto related, are regulated.

Section 13. Wires over open water. [A]ny person . . . maintaining, or erecting . . . transmission . . . lines over and across the open waters . . . shall . . . inform the commission [Aeronautics] and the Director of the Coast and Geodetic Survey of the exact location of such lines and the height of such lines above the water level and shall furnish such other information. . . .

RSA 371:17 in pertinent part reads as follows:

Whenever it is necessary . . . that any public utility should construct . . . wires . . . over, under or across any of the public waters . . . it shall petition the commission for a license to construct and maintain the same.

We address the plaintiff's contention that the defendant's violations of the above statutes constitute negligence per se:

In this jurisdiction the law regarding the imposition of civil liability for violation of a statute is well settled. "The violation of a statute . . . becomes an actionable wrong only when the consequences contemplated by the provision in question have actually resulted from its violation. If none of the consequences which the enactment was designed to guard against have resulted from its breach, such a breach does not constitute an actionable wrong even though some other injurious consequence has resulted. It is not enough for a plaintiff to show that the defendant neglected a duty imposed by statute and that he would not have been injured if the duty had been performed. He must go further and show that his injury was casued by his exposure to a hazard from which it was the purpose of the statute to protect him."

*Emery v. Booth,* 114 N.H. 646, 647–48, 325 A.2d 788, 789 (1974) (citations omitted); *see Fontaine v. Charas,* 87 N.H. 424, 426, 181 A. 417, 418 (1935).

The plaintiff concedes that RSA 422-B:1 and :13 and RSA 371:17 do not contain regulations directly affecting wires and their location, except for section 13 which provides for informing the two named agencies. Nevertheless, the plaintiff argues that the jury had the right to determine what, if anything, the aeronautics commission might have required relative to markings or relocation of the lines, if in fact it had been notified by the defendant in compliance with RSA 422-B:13.

The plaintiff admits that she had no proof which would permit an inference that the commission would have required markings or relocation of lines. Therefore, such a finding would be based solely on impermissible conjecture. *Winslow v. Dietlin*, 100 N.H. 147, 149, 121 A.2d 573, 575 (1956); *Cozzi v. Hooksett*, 84 N.H. 530, 535, 153 A. 317, 320 (1931). Moreover, the record indicates that a representative of the aeronautics commission testified that he knew of no statutory requirements or industry standards requiring special treatment of lines such as those involved in the present case. The commission representative further testified that the only locations at which he had seen markings were near airport approaches, and that he had imposed no requirements on the defendant when the damaged lines were replaced. We conclude that even if the defendants had complied with all statutory requirements, the plaintiff's accident and resulting injuries would have occurred in exactly the same way that they did. Therefore, the plaintiff's cause of action lacks the essential element of all actions sounding in tort; it lacks a causal connection between the defendant's alleged negligence and the resulting injury.

■ Her next argument relates to RSA ch. 371 entitled, "Proceedings to Acquire Property or Rights." We have held that section 1 of this chapter (petition) grants to a public utility statutory authority to exercise the power of condemnation. *Public Service Co. v. Shannon*, 105 N.H. 67, 192 A.2d 608 (1963). It is clear that RSA 371:17, quoted above, is merely a licensing provision to permit utilities to cross public waters or lands which are not subject to the power of condemnation. It is not, as the plaintiff argues, a safety statute.

Considering all of the evidence before us, we conclude that the statutes relied upon by the plaintiff to establish the defendant's negligence have no relation to the facts in this case. "Failure to observe a statutory requirement 'is immaterial unless it contributed to the accident.'" *Vassillion v. Sullivan*, 94 N.H. 97, 101, 47 A.2d 115, 118 (1946) (citations omitted).

■ Applying the principles of *Emery v. Booth,* quoted above, we hold that the trial court did not err in excluding any and all reference to RSA 422-B:1 and :13, RSA 371:17, and the 1953 public utilities commission record.

*Exceptions overruled.*

All concurred.