Carroll,
April 6, 1943. } No. 3381.

MARION BENNETT *v.* AUSTIN E. BENNETT.

WINNIE B. DRAKE *v.* SAME.

*Cooper, Hall & Grimes (Mr. Burt R. Cooper* orally), for the plaintiffs.

*Murchie & Murchie (Mr. Alexander Murchie* orally), for the defendant.

PAGE, J. The plaintiff Bennett drove her husband's car from Freedom to Durham on the afternoon of the accident, taking the plaintiff Drake as her guest. At Durham she took in her son, the defendant, and he drove northward in the direction of Freedom. At about 5:30 a beach wagon driven south by Ballantine skidded over into the north-bound lane ahead of the defendant, and there was a serious collision in that lane, the right front corner of the Bennett car hitting the right front door of the Ballantine car, which buried its nose in the snow bank on the easterly side of the road.

There was evidence showing ice on the highway, but the extent to which the surface was slippery was in some dispute. The defendant was driving between forty and forty-five miles an hour. Brake marks were found about twenty-five and a half feet long, indicating an attempt by the defendant to stop, but there was no indication that his car skidded at all when he applied the brakes. His car never left its own lane. Ballantine did not apply his brakes, but skidded on a slightly rising grade.

The distance of the Ballantine car from the Bennett car when the former skidded was in dispute. According to Ballantine it was between three and four hundred feet. Mrs. Drake testified that the distance was much less, and that the accident happened "quite suddenly" after she saw the beach wagon come into the north-bound lane. The defendant testified that he applied the brakes as soon as the beach wagon came over into his lane, which with the short brake-marks warranted a finding that the distance was short.

State trooper Swift arrived at the scene of the collision from the north nearly an hour and a half after the accident, but before the cars had been moved. Besides testifying as to the position of the cars and the measurements of the brake-marks, he was permitted, subject to exception, to say that the surface was not slippery; that there had been no rain since 5:30 (when the accident happened, and

when it was claimed by the plaintiffs that the weather was misty and freezing); that he drove much of the distance of fifteen miles at fifty miles an hour; that he had no difficulty as to skidding.

The plaintiffs' objections to this testimony were based upon alleged remoteness in time and place. As to the time, the relation of the surface conditions of 6:34 and 6:55 (the period when Swift was approaching the scene) to 5:30 (the time of the collision) is not necessarily remote in view of Swift's testimony that it was not misting at 5:30. As to place, the fact that the defendant drove from the south to the point of accident, while Swift came from the north, is not conclusive, but only matter for the trial court to consider in determining whether the evidence was too remote to aid the jury. We cannot say as matter of law that it was too remote, and are unable to disturb the trial court's exercise of discretion. *Dowling* v. *Shattuck*, 91 N. H. 234, 239. The court's discretion was not abused merely because this witness was not permitted to testify that "road conditions change rather rapidly." The exclusion was on the ground that the witness "couldn't know any more about that than the jurors." It does not conclusively appear that the witness could help the jurors in this respect, since, as the court intimated, it is common knowledge that road conditions do sometimes change rather rapidly. It does not follow, however, that they did in this instance, and the plaintiffs made no attempt to show that such was the case other than to let the jurors speculate on the basis of the common knowledge which the testimony sought could do no more than confirm.

Police officer Wade of Union arrived at the scene of the accident soon after it happened. He said that it had been misting, and was misting, freezing as it fell. Plaintiffs' attorney then asked Wade whether it was slippery or icy. The court suggested that the question be rephrased. The witness accordingly was asked to describe the condition of the road, upon which he said that it was icy. "Was it slippery?" This was excluded, without exception, as leading. "What else beside being icy . . .?" "It had been sanded, and of course with the rain coming down . . . it was glazed over somewhat again." "What else do you remember about the condition of the road . . .?" "I can't say any more than that it was an icy highway." "Was it slippery?" Upon defendant's objection, counsel for the plaintiffs argued that the witness' recollection had been exhausted and that a leading question was necessary to refresh his memory. The question was excluded and

the plaintiffs excepted. This was the third time that the plaintiffs' counsel had used the suggestive word "slippery." The court could properly conclude that it was not the witness' want of memory that was the cause of his failure to say categorically that the road was slippery. The trial justice was under no compulsion to exercise his discretion to permit the question. *Huckins* v. *Insurance Co.*, 31 N. H. 238, 247.

Ballantine was allowed, subject to the plaintiffs' exception, to testify that after the accident he consulted an attorney relative to his legal rights. He was not asked what the attorney told him, but testified without further objection that he had brought no suit. The first question did not call for the opinion of the attorney as to Ballantine's legal rights. As far as appears from the record, the plaintiffs' sole objection to the question was that it did. If the opinion did get in indirectly and by implication, it was because the plaintiff made no objection to the second question concerning lack of suit. No question, therefore, is now presented.

The plaintiff Drake, after testimony that "in the distance" she saw a car sliding across the road onto the lane in which she was traveling, was asked, "And what happened after that?" She replied, "Well, my thought was, 'I hope we get by.'" Upon objection, the answer was stricken out and the plaintiffs excepted. The answer was wholly irresponsive, and it was proper to strike it out. *Spear* v. *Richardson*, 37 N. H. 23, 30. The only relevancy suggested for the answer, in any event, was that it showed that Mrs. Drake's view of the Ballantine car was not instantaneous with the crash. Entirely aside from the fact that a lapse of time might be shown otherwise, it had already appeared that Mrs. Drake saw the beach wagon "at a distance." Accordingly the trial justice said, in making his ruling, "I agree the collision was not instantaneous. Now what you are really trying to do is to measure the distance by this method. It would seem to me a poor way of doing it." We agree. The "hope" that a collision would not take place suggests that the chance of getting by the Ballantine car appeared at least doubtful to Mrs. Drake, thus being of no benefit to her if admitted, since it tended to shorten the "distance" to at least comparative nearness. Moreover, the witness was not deprived of the opportunity to testify as to the distance in objective, rather than subjective, ways. While she was poor at estimating distances in terms of feet, it appeared in a passage from her deposition, used in her examination, that she described the distance as more than a certain

space that was agreed to be thirty feet, how much more she was unable to say; while in her testimony before the jury she described it as the distance she sat from the street—a distance that the jury were competent to estimate for themselves. The ruling was correct technically, and it resulted in no possible prejudice to the plaintiffs.

The plaintiffs claim that the trial was rendered unfair by the methods of cross-examination permitted to the defendant's counsel while Mrs. Drake was a witness. She was faced with a statement purported to have been made by her two months and a half after the accident, and ending with the words, "Have you read the above page-and-a-half statement and is it true?" She admitted that under this she wrote "Yes" and signed her name, but denied that she had more than glanced at it, nor did she recall having made certain statements in it, as that she did not notice the road conditions, that the defendant drove carefully and not too fast, and that she felt that "the sole cause of the accident was the Ballantine car cutting across the road in front of Austin." The admissions not having been proved by her memory, the attempt to contradict her by this statement came to nothing unless the jury, as they might, chose to believe that she had signed the statement after having read it and that she meant precisely what she admitted having written. They were equally at liberty to disregard the supposed admissions if they believed her testimony that she wrote as she did only because she was asked to, without disclosure to her of what her writing signified. It was a pure question of fact. This statement was given on April 2, 1941.

Her further cross-examination concerning this statement was not unduly prejudicial. Asked if she intended to sue Ballantine on April 2, she answered "No." Her negative answer was consistent with lack of belief on her part that Ballantine was solely at fault, and tended to help her rather than prejudice her. Moreover, it had just appeared that she had not, on April 2, taken legal advice. Asked whether on April 2 she had any intention of suing the defendant, she twice replied that she left that question to her lawyers. The net result of these lines of examination was to leave the problem right where it had been left by the cross-examination concerning her statement of April 2 that Ballantine was solely to blame and the defendant not at fault, but if anything in a light more favorable to her than as if she had not been examined concerning her intentions as to suits. No undue prejudice resulted.

The same may be said concerning the question put to her whether

she would be having this suit if the defendant had been driving carefully. Her answer was not if that statement of April 2 were true. The truth of that statement was for the jury. Further as to her actions, she was asked why she had never sued Ballantine. She never answered, and the motion to strike out the question and answer raises no question here. One other point of cross-examination as to her action remains. She admitted, without exception, that she and the other plaintiff talked over the matter of the accident but never said anything to each other about whether Austin was to blame or not. Then she was asked, "Neither you nor she claimed that he was to blame to each other?" She answered "No" over the plaintiffs' exception. The substance of the matter inquired about was already in without exception, and no undue prejudice could result, even if the failure of either to suggest to the other that the defendant was at fault was not findably a tacit admission that this action was lacking in good faith.

Mrs. Drake was also faced with her deposition, taken only two days before she testified in court. Her attention was called to one interrogatory of the deposition: "Now when you said that did you also say that the sole cause of the accident was the Ballantine car going across the road in front of Austin, and that was true, was it?" When the deposition was taken, the plaintiffs objected to this question. The trial justice admitted the question and answer ("Yes"), subject to exception. The witness then admitted that she had so testified on deposition, but said that she did not remember the word "sole," which, she volunteered, means "wholly."

The objection to the interrogatory was that it was a double question. If on examination in chief the court might have ordered the question divided, to avoid confusing the witness, no reason is perceived why it was improper to use the question in its double form as a means of contradiction. The witness was not confused by it. She knew what "sole" meant, and she testified that she had understood the question when she answered it on her deposition. The witness was given full opportunity at the trial to explain her findable admission that Ballantine's car was the sole cause of the accident. Her explanation was that, as she remembered, she added that if the road had not been slippery and they had not been going quite so fast, there would have been no accident. The situation presented to the jury factual questions as to the credibility of the witness and as to the supposed admission, and there was no error in permitting the examination. The claim that the admission was a mere opinion

upon a complicated issue of law and fact cannot be favorably received. Of course the witness was not stating an opinion as to the law. She expressed an "opinion" concerning the facts, and her "opinion" was based on matters within her own observation, and in that field her opinion, if it be an opinion and not an assertion of observed fact, could be of aid to the jury, who did not themselves see the accident happen.

The plaintiffs offered to prove that at the hospital, four hours after the accident, Mrs. Drake said to a witness, "I wish Austin hadn't been driving so fast." The offer was rejected, subject to exception. One basis of the offer was that the declaration was part of the "res gestae."

Spontaneous exclamations are admissible only when made so closely to the particular occurrence that we may assume that the declarant's mind is controlled thereby, so that the exclamation is involuntarily forced out of him by that event, without opportunity for reflection or determination as to what it might or might not be wise to say. There must be no fair opportunity for the will or choice of the speaker to mould his words or for reflection to form opinion, and the hearsay declaration may be admitted only if it has the mark of such spontaneity. 6 Wigmore, Evidence (3d ed.), s. 1747, and the opinions of Barrows, J., Lacombe, J., and Bleckley, C. J., especially favored by the author; Semprini v. Railroad, 87 N. H. 279, 280; State v. Peters, 90 N. H. 438, 439. Whether or not this test of spontaneity is met is for the determination of the trial court in the exercise of a sound discretion. Bullard v. McCarthy, 89 N. H. 158, 161; Dorr v. Railway, 76 N. H. 160; Madden v. Railroad, 76 N. H. 379. It is true that the declaration need not be strictly contemporaneous with the accident. Murray v. Railroad, 72 N. H. 32, 36, 37. Its admissibility depends upon a finding that the declaration had its source in such continuing excitement that spontaneity exists. There was no proof, or offer of proof, that Mrs. Drake's declaration was prompted by reason of the excitement caused by the accident, or that she was under any excitement when she spoke. All that appeared was that she was "suffering terribly," and that alone would not be sufficient to compel a discretionary finding of spontaneity in a declaration made four hours after the accident, even if such a finding could be sustained. As far as appears, the declarant had had ample time for reflection, and the self-serving character of the declaration, even if not conclusive, was properly to be considered under the circumstances. Semprini v. Railroad, supra, 280, 281.

The plaintiffs further say that the declaration was admissible as evidence of Mrs. Drake's state of mind. It is true that declarations of state of mind may be received, pertaining to pain, suffering, design, intent, or motive (6 Wigmore, Evidence (3d *ed.*), *ss.* 1714–1740), but it is to be noted that the declaration in this instance did not concern what the declarant felt, but did concern the external circumstances causing the injury. As such it did not satisfy the principle of necessity, nor was it, as we have seen, such as must be thought to have been evoked by the mental state induced by the accident. *Ib. s.* 1722, and compare *Boulanger* v. *McQuesten*, 79 N. H. 175, 176.

Finally, it is urged that the declaration was receivable to rebut the findable admission that the defendant was not to blame. In other words, the plaintiff Drake claims the right to escape an admission by means of hearsay testimony regarding an earlier self-serving statement. The phrasing of the claim in this form amply negatives it. The admission was evidence of more than a state of mind. But if it were only that, it would be strange to permit the jury to rebut a state of mind in May, 1942, or April, 1941, by proof of another state of mind in January, 1941.

The defendant testified that he was driving between forty and forty-five miles an hour. He was asked on cross-examination whether he had ever driven this car above forty-five miles an hour. He answered affirmatively. Then he was asked, "Considerably above forty-five?" and that question was excluded, subject to exception. The only argument for admissibility was that the answer might have a bearing on the defendant's judgment as to speed. The short answer is that if the witness had experience in driving above forty-five miles an hour, he qualified as having judgment as to the speed to which he testified. Any driving at speeds considerably above forty-five would qualify his judgment only as to higher speeds, not as to the lower speed to which he had testified.

The plaintiffs excepted to the submission to the jury of the question of their contributory negligence. Assuming that the road conditions were found to be as bad as they claimed and that the defendant was driving too fast, the question would arise whether they knew and realized the dangers involved, or in the exercise of due care should have known and realized them, and in consequence should have protested to the driver. They say that there is "no evidence from which it could be found that either plaintiff was not justified in entrusting her safety to the defendant, . . . or failed to exercise due care under all the circumstances."

Riding down this road a few hours before the accident, with Mrs. Bennett driving, Mrs. Drake noticed that the surface was very slippery. Returning, with the defendant driving, she said there was a heavy mist. She knew it was slippery, she said, because "once in a while you could feel the back of the car sway just a bit." She could not tell much about the speed, but they "were moving right along." Mrs. Bennett thought they were going more than thirty-five miles an hour, but could not remember whether it was slippery or whether she asked the defendant to slow down. But if Mrs. Drake in the front seat felt the rear end sway, Mrs. Bennett, in the back seat, findably ought to have known that fact. Whether the circumstances required that they should speak to the defendant, was for the jury. One circumstance was the fact that Mrs. Bennett was the mother of the defendant, and Mrs. Drake the first cousin of the defendant's father, while the defendant was eighteen years of age. In view of their blood relationship and the disparity of age, it might be found that they had more occasion to protest the speed, if excessive, than those not bearing the same relationship of kin and age to the defendant. This it would be proper to weigh against such occasion as they findably had to believe that the defendant was a competent driver. It cannot be said as a matter of law that they exercised due care for their own protection, if the jury believed the defendant's testimony, substantiated by that of Mrs. Drake, that neither protested a speed that they claimed was excessive under all the circumstances.

The plaintiffs excepted to the submission of the emergency doctrine. They claim that the only issue was whether the defendant's speed was excessive. But if the jury found, as they might, that it was not excessive, there was ample room for the emergency doctrine, and it could not be found, on that theory, that the defendant's excessive speed caused the emergency.

The plaintiffs excepted to the denial of their request for instructions that "forty-five miles an hour has been set . . . as the highest speed which would be reasonable under the most favorable highway and weather conditions." Although it is *prima facie* lawful to drive at forty-five miles an hour and *prima facie* unlawful to drive faster, it is still open for the jurors to say whether, under any given conditions, the rate of speed is reasonable. R. L., c. 119, ss. 29, 30. They are not bound to find that forty-five miles an hour is the highest permissible speed under the best of conditions. The request was based on a mistaken interpretation of the statute.

The plaintiffs requested certain instructions, incomplete and improper in themselves, concerning Ballantine's fault that brought to the court's attention the proposition that if the defendant "was at fault in any way, or to any extent" causally, there should be a verdict for the plaintiffs. While the trial justice did not use the precise words, he did say, "If you decide that the speed of the Bennett car was unreasonable or that Austin Bennett was negligent, then you will come to the question of whether or not the speed of the car in violation of the statute or any negligence caused the accident in whole or in part." This brought the thought clearly to the minds of the jurors. The court continued, "If neither the speed of the Bennett car nor any negligence of Austin Bennett was causal of the accident, that is, if the accident would have happened anyway regardless of any fault of the defendant, then your verdict should be for the defendant." Clearly the jury were given to understand that the only thing that would warrant a finding for the defendant was the fact that he was not causally at fault at all or in any part. Later the court said, "If the accident was due solely to the conduct of Mr. Ballantine, without fault on the part of Austin Bennett or without being caused at all by the conduct of Austin Bennett, the plaintiffs are not entitled to recover." We cannot see how the jury could have understood, as the plaintiffs argue, that they were to decide merely as between Bennett and Ballantine, that they could return a verdict for the defendant if both were at fault or if Ballantine's negligence was greater than Bennett's. The language was not fairly capable of such an implication; in fact it obviously implied the contrary. *Stowe* v. *Company*, 91 N. H. 261, 264; *McCarthy* v. *Souther*, 83 N. H. 29, 34.

The plaintiffs requested an instruction that the mere fact that the collision occurred on Bennett's side of the road did not relieve him of liability. The jury did not need to be told that. There was no least doubt that the collision happened wholly on Bennett's side. The jury would have had nothing to pass upon except on the theory that, in spite of this, Bennett would be liable if his fault were found, and it were found to be causal. Nor would they have been told, "Consider the conduct of Austin Bennett, whether he might have avoided the accident by slowing down or by following a different course in the highway." By the portion of the charge last quoted, the substance of the request was granted by obvious implication.

Requests were denied that assumed the causal effect of unreasonable speed as a matter of law and not of fact. The cases cited by the

plaintiffs, *Hobbs* v. *Railroad*, 88 N. H. 112, and *Pickard* v. *Morris*, 91 N. H.. 65, do not sustain this position. While the speed statute and the licensing statute (see *Johnson* v. *Railroad*, 83 N. H. 350, 364) are to some extent similar in their purpose to protect the traveling public, the rule of causation as a matter of law applied by way of interpretation in the *Johnson* case is not adopted as to the speed statute. In the *Johnson* case a positive rule was involved that any person driving a motor vehicle in the highway without a license is an outlaw. In this case we deal with a statute making *prima facie* provisions bearing on evidentiary proof. Though the statute is both civil and criminal, it imposes, as matter of duty, merely the common-law rules of reasonable care as to speed in driving. It is not construed to change anything except the common-law rule of proof. It "does not alter the common law beyond its express or implied intendment." *Ham* v. *Authority, ante*, 268. Further, the distinction of treatment as between the outlawed non-licensee and the lawful licensee driving at an unlawful speed is clear from the beginning of legislation on the subject. Laws 1905, *c.* 86, *ss.* 5, 8, 10; Laws 1911, *c.* 133, *ss.* 13, 14. The causative rule of the *Johnson* case is not applicable to this case. The ordinary substantive rules of common-law causation are.

*Judgments on the verdicts.*

All concurred.