Submitted June 1, affirmed June 29, 1960

# STATE OF OREGON *v.* HUTCHISON

353 P. 2d 1047

534

Glenn D. Ramirez and Robert M. Redding, Klamath Falls, filed a brief for appellant.

Arthur A. Beddoe, District Attorney for Klamath County, and O. W. Goakey and Ernest F. Gordon, Deputy District Attorneys for Klamath County, Klamath Falls, filed a brief for respondent.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

ROSSMAN, J.

This is an appeal by the defendant, William Roy Hutchison, from a judgment of the circuit court, based upon the verdict of a jury, which found him guilty of the crime of Contributing to the Delinquency of a Minor and which sentenced him to a term in the penitentiary. The minor was a boy 5 years of age. The purported wrong is said to have been committed in a trailer house belonging to the defendant which stood a short distance from a trailer house occupied by the boy's parents. The trailer park was near the city of Klamath Falls.

Only three witnesses testified: they were the parents of the minor and a member of the Oregon State Police. The defendant did not testify and did not call a witness. Neither the police officer nor the parents saw the alleged wrongful act occur. The little boy was not offered as a witness. The police officer related a confession which he swore the defendant made to him in the evening of the alleged wrongful act,

October 30, 1959, and produced a four-page typewritten document, signed by the defendant, which appears to be questions and answers propounded to and answered by the defendant on the morning of October 31, 1959. The questioning was done by the district attorney and the material was typed by a stenographer. The parents of the boy testified that in less than four minutes of the time that they found their child near the defendant's trailer he told them of the defendant's wrongful action. The father believed that the boy made his statement within two minutes of that time. The defendant makes no contention that his confession was wrongfully obtained, and none that its typewritten form does not correctly record what he said. The veracity of the parents was not attacked.

The defendant submits three assignments of error. The first of them challenges a ruling of the trial judge which permitted the mother of the boy to state what the latter told her the defendant had done to him. The sole objection which the defendant voiced was, "That is hearsay."

The mother's testimony and similar testimony given by the father was presented by the state to meet the demands of ORS 136.540 which says:

"* * * nor is a confession only sufficient to warrant his conviction without some other proof that the crime has been committed."

According to the state, the criminal conduct occurred October 30, 1959, about 4 p. m. At that time the mother, while attending to her infant daughter, thought the little boy was in the trailer house next door and, upon discovering her mistake, went in search for him. As she started forth the father came home from his work and joined her. The mother swore

that she "yelled" the boy's name so loud that it could be heard inside the trailers. Presently the parents saw the boy a few feet from the defendant's trailer. They did not, however, see him come out of the defendant's trailer and the door to the latter was closed when they saw him. At that moment the boy was putting on his jacket which may indicate that he had just returned to the outdoors.

The mother testified that the boy had been away for three quarters of an hour when she went forth upon the search. When she found him she was provoked to realize that he had gone to a strange place without first telling her, and was starting to reprimand him when the latter said, "That man was a bad man, Mommy." Thereupon, the boy divulged what had occurred. The account, as repeated by the parents, was short. The mother, referring to the boy, testified:

"He seemed to be, oh, flushed and kind of emotionally, I thought. He was different than he usually is, is the only way that I can describe it."

She swore that the boy gave his description of the defendant's wrongful conduct within "about three or four minutes" of the time that the parents found the boy near the defendant's trailer. The father thought the boy related the incident within two minutes of the time he was found.

The mother testified that the parents had not mentioned the incident to their son since October 30 "because we didn't want him to remember it, or you know, think it was a big issue or anything."

The admissibility of the boy's account of what the defendant had done, as repeated by the mother and the father, is challenged solely by the objection, "That is hearsay."

There may occur suddenly in the presence of one who becomes its victim a startling event which draws from the individual a spontaneous declaration before he has had time for reflection or opportunity to contrive a statement which will serve his interest. The sudden occurrence in one's presence of an affray, a bad accident or an episode of gunplay may benumb the reflective powers of the observer and cause the exciting event to seize his tongue and speak through it. In instances of that kind the powers of reflection are stilled for the time being, but the tongue responds impulsively or instinctively to the excitement of the event. The utterance is really an effusion. Being spontaneous in nature, the declaration is free from the elements of design, contrivance and self-service which at times color testimony given from the witness stand. The credibility of a declaration of that kind is not dependent solely upon the veracity of the declarant. The pain, excitement or horror of the event had stilled the powers of reflection and had enabled the event itself to speak through the tongue of the declarant. It is the startling event rather than the will of the declarant that propelled his tongue. If one who sought the truth were required to make a choice between the spontaneous declaration and the testimony under oath of the declarant he possibly would choose the former. The circumstances under which the spontaneous declaration was made commend it as a reliable index to the truth.

Wigmore on Evidence, 3rd ed, § 1747, says:

"* * * Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance

may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts. * * *"

McCormick on Evidence, § 272, says:

"* * * The factor of special reliability is thought to be furnished by the excitement which suspends the powers of reflection and fabrication. Again, as in the other cases of 'spontaneous' statements in this chapter, this factor of special reliability serves to dispense also with any requirement that the declarant be unavailable as a witness, on the view that even his testimony on the stand would be less reliable than the statements made under the excitement of the event. Psychologists would probably concede that excitement stills the voice of reflective self-interest but they might question whether this factor of reliability is not overborne by the distorting effect which shock and excitement have upon observation and judgment. But they might well conclude that contemporaneous statements both excited and unexcited are so valuable for the accurate reconstruction of the facts that the need is not to narrow the use of excited statements but to widen the exception to embrace as well unexcited declarations of observers near the time of the happening.

"At any rate, excitement flowing from a startling event is the key requirement now. * * *"

The rules of evidence that have found codification in Oregon make provision for the receipt in evidence of a declaration of the kind just mentioned. ORS 41.870 says:

"Where the declaration, act or omission forms part of a transaction which is itself the fact in dispute, or evidence of that fact, such declaration,

act or omission is evidence as part of the trans-
action."

*State v. McCarthy,* 160 Or 196, 83 P2d 801, gave effect
to the rule of evidence which we have under considera-
tion. In that case this court said:

> "* * * The statement of the decedent that
> he was robbed, which was admitted as a part of the
> res gestae, was proof tending to show that fact.
> * * *"

And in prosecutions for rape the state may show that
shortly after the alleged act the woman made com-
plaint: *State v. Tom,* 8 Or 177; *State v. Sargent,* 32
Or 110, 49 P 889; *State v. Matson,* 120 Or 666, 253 P
527; and *State v. Haworth,* 143 Or 495, 21 P2d 1091.
The Matson decision says:

> "* * * Of course, when the declaration is
> contemporaneous with the offense, it is a part of
> the *res gestae* and then the particulars of the state-
> ment are admissible. * * *"

Wigmore on Evidence, 3rd ed, § 1750 gives ex-
tensive consideration to the time interval that may
occur between the exciting event and the declaration.
It says:

> "The utterance must have been *before there has
> been time to contrive and misrepresent, i.e.* while
> the nervous excitement may be supposed still to
> dominate and the reflective powers to be yet in
> abeyance. This limitation is in practice the subject
> of most of the rulings.
>
> "It is to be observed that the statements *need
> not be strictly contemporaneous* with the exciting
> cause; they may be subsequent to it, provided there
> has not been time for the exciting influence to lose
> its sway and to be dissipated. The fallacy, formerly
> entertained by a few Courts, that the utterance must

be strictly contemporaneous (*post,* § 1756), owes its origin to a mistaken application of the Verbal Act doctrine:"

At that point Wigmore quotes the following from *State v. Murphy,* 16 RI 528, 17 A 998:

"The second statement  *  *  * was later in time by several minutes; but we do not think this is decisive, since the controlling element of admissibility is not the interval of time, but the real and illustrative connection with the thing done, in which the interval of time is a factor  *  *  *. That which is recognized by common experience as the instinctive outcome of an act is for this reason deemed to be a part of it, whether the time of expression be five or fifteen minutes after."

McCormick on Evidence, in commenting upon the time element, states:

"Whether this period affords opportunity for contrivance will be much affected by the declarant's physical condition during the interval, and shock, pain, unconsciousness and like stresses will tend to postpone that opportunity."

At that point McCormick gives the following footnote:

"Elapsed time in some recent cases follows. Declarations excluded: Alabama Power Co. v. Ray, 249 Ala. 568, 32 So.2d 219, syl. 3 (1947) (5 minutes); Everett v. State, 213 Ark. 470, 210 S.W.2d 918, syl. 5 (1948) (15 minutes); Brown v. United States, 80 App.D.C. 270, 152 F.2d 138, syl. 3 (1945) (3 hours); Bennett v. Bennett, 92 N.H. 379, 31 A.2d 374, syl. 15-20 (1943) (4 hours); Ebeling v. Harmon, 83 Oh.App. 519, 80 N.E.2d 704, syl. 3 (1948) (5-10 minutes); State v. Smith, 200 S.C. 188, 20 S.E.2d 726, syl. 8 (1942) (statements during period from 30 minutes to 1½ hours after homicidal act). Declarations admitted: Standard Accident Ins. Co.

v. Heatfield, 141 F.2d 648, syl. 3, 4 (C.C.A.Wash., 1944) (statements one hour, and 1½ hours, respectively); Maynard v. Hall, 61 Ariz. 32, 143 P.2d 884, syl. 3, 150 A.L.R. 618 (1946) (1½-3 minutes); State v. Sucik, 217 Minn. 556, 14 N.W.2d 857 (1944) (2-3 minutes); State v. Godwin, 51 N.M. 65, 178 P.2d 584, syl. 5 (1947) (one-half hour); Meyers v. Hagert Const. Co., 74 N.D. 435, 23 N.W.2d 29, syl. 1 (1946) (one or two minutes); Comm. v. Logan, 361 Pa. 186, 63 A.2d 28, syl. 5 (1949) (7 minutes); Lusk v. Monongahela Water Co., 164 Pa.Super. 354, 64 A.2d 670, syl. 2-6 (1949) (about ½ hour); Taylor v. State, 149 TexCr. 530, 196 S.W.2d 925, syl. 3 (1946) (5 minutes). See also notes collating time-intervals, 24 Wash.U.L.Q. 273 (1939), 130 A.L.R. 302-306."

McCormick on Evidence, § 272, states:

"The test to be applied by the judge is: was the declaration spontaneous, excited, or impulsive, or was it the product of reflection and deliberation? *   *   *"

Wigmore on Evidence, 3rd ed, § 1756, states:

"But under the present Exception an utterance is, by hypothesis, offered as an assertion to evidence the fact asserted (for example, that a car-brake was set or not set), and the only condition is that it shall have been made spontaneously, i.e. as the natural effusion of a state of excitment (*ante*, § 1749). Now this state of excitement may well continue to exist after the exciting fact has ended. The declaration, therefore, may be admissible even though *subsequent* to the occurrence, *provided it is near enough in time to allow the assumption that the exciting influence continued.*"

■ We believe that the admissibility of the declaration is not determined by a stop-watch which counts the number of minutes that elapse from the moment of

the exciting event to the utterance of the declaration, but, by a determination of whether or not the sway of the exciting event still dominated the declarant when he spoke.

If it could be said that the little boy's utterances were mere narrative, we do not think that the objection would exclude the statement. McCormick on Evidence, § 272, says:

> "It is sometimes, under the lingering spell of the 'res gestae' metaphor, held that a declaration which is a 'mere narrative' of a past event, or one made in answer to a question, or one which is 'self-serving' in the sense of favoring the declarant's interest, are automatically excluded. The currently prevailing view, however, is that these are merely factors for consideration of the judge in deciding whether the declaration was spontaneous or contrived."

See to like effect Wigmore on Evidence, § 1756 (c).

■ The fact that the declarant was only 5 years of age when he made his statement and was, therefore, possibly incapable of taking an oath as a witness (ORS 44.030 and *State v. Jackson,* 9 Or 457; but see *State v. Jensen,* 70 Or 157, 140 P 740) did not affect the fact that he spoke under the stress of circumstances that had the same truth-exacting effect as an oath. Normally infancy does not alone exclude spontaneous declarations. Wigmore on Evidence, 3rd ed, § 1751 (c)(1) and McCormick on Evidence, § 272 at p 582.

The tendency appears to be to broaden the use of spontaneous declarations. One writer declares:

> "As appears in the foregoing discussion the trend is toward the widening of the admission of spontaneous statements under the vague rubric of *res gestae.* There is need for further progress in this direction. * * * Some courts have said that

there should be a wider latitude for the admission of spontaneous statements in workmen's compensation cases, and the Minnesota court has held in a fatal accident case that a statement by the victim as to a fall made unexcitedly about 45 minutes later, uttered before he could have believed that his injury would be serious and when he had no motive to misrepresent, was admissible under 'a liberal interpretation of the *res gestae* rule.' This is the kind of judicial enlargement of existing evidence law to meet emerging needs that offers the best promise of survival of the common law system. * * *" McCormick on Evidence page 583.

■ We come now directly to the question as to whether the little boy in the case at bar made his declaration to his parents at a time when the excitement of the event dominated him to such an extent that it and not his powers of reflection or design, prompted his tongue. The boy's mother, as we have seen through quotation from her testimony, described him when she found him as "flushed and kind of emotionally. * * * different than he usually is." The little fellow, according to what he told his parents, and likewise according to what the defendant described in his confession, had undergone an experience in the defendant's trailer house different from what children encounter in the little world in which they live. One can readily understand that this five-year-old boy was "flushed * * * different than he usually is." He had instinctively felt that the experience which he had undergone was wrong; it had given him a sense of shame and of reproach. Accordingly, when his mother started to reprimand him for having gone to a strange place without first telling her about it, he broke in upon her by saying, "That man was a bad man, Mommy * * *." The declaration appears to have been

spontaneous and made while the stress of the harrowing experience was upon the boy. We believe that the trial judge was warranted in receiving in evidence the challenged declaration.

*Peterson v. Cochran & McCluer Co.*, 308 Ill App 348, 31 N.E.2d 825, states:

> "* * * The question of admissibility is one of administration, each case being properly decided upon its own facts, and in this regard the trial court should be clothed with a reasonable degree of latitude, since the application of the principle depends on the circumstances of the particular case. * * * Prof. Wigmore advocates leaving the application of the principle of res gestae absolutely to the trial court's determination. Wigmore on Evidence, 3d Ed., Vol VI, sec. 1750. * * *"

McCormick on Evidence, § 272, believes that in ruling upon the admissibility of evidence of this kind "the trial judge must be given considerable lee-way of decision."

In our opinion the first assignment of error is without merit.

■ The second assignment of error is based upon a contention that under the definition of "person" as given in ORS 167.205 only the "parents, legal guardians or any other person having the care or custody of a child" can be guilty of contributing to its delinquency as that crime is defined in ORS 167.210. The defendant was a stranger to the child. ORS 167.205 says that the word person "includes" the individuals just mentioned. We do not believe that it excludes all others. We reject this assignment of error.

The third assignment of error is, as the defendant-appellant concedes, a restatement of the first and second. We have found them to lack merit.

The challenged judgment of conviction is affirmed.