394 P.2d 196

**STATE of Arizona, Appellee,**

**v.**

**Richard R. BOODRY, Appellant.**

**No. 1305.**

Supreme Court of Arizona.

En Banc.

July 15, 1964.

Robert W. Pickrell, Atty. Gen., by Stirley Newell, Asst. Atty. Gen., and Charles N. Ronan, Maricopa County Atty., for appellee.

Shepard M. Weinstein, Phoenix, for appellant.

BERNSTEIN, Justice.

Appellant Richard R. Boodry was convicted of rape (A.R.S. § 13–611(1) ) and incest (A.R.S. § 13–471) in Maricopa County Superior Court. The charges were based upon an attack he made on his five year old daughter. He was sentenced to serve 20 to 30 years on the rape count, and 5 to 10 years on the incest count, the sentences to run concurrently.

Defendant and his wife lived in the front house of 117 West Forest Grove, in Phoenix. Mrs. Ruby Opal Collins, who lived in the back house, was employed to baby sit with Mrs. Boodry's three children, the victim, age 5, a boy, 2, and a ten month old baby. On the day in question, defendant took his wife to work at 1:00 p. m. at a cafe half a mile from their home. He had been drinking heavily. When he returned, he took the three children from Mrs. Collins' house to his own house, although she had been employed by his wife to keep them all day.

About 2:00 p. m., Mrs. Collins attempted to get the children for their lunch, but the doors were locked and she could not get in. About 5:00 p. m. she heard Penny, the five year old victim crying and hollering "Daddy, oh, daddy," as if she were being whipped. This went on for about fifteen minutes. Mrs. Collins attempted to get into the house and kicked at the door until the latch gave way. When she entered, she saw the baby was in one bedroom, the little boy was sitting on the couch, and Penny and the defendant were on his bed.

Defendant's trousers and undershorts were pulled down to his knees. The child's panties were off and she was naked from the waist down. She was lying on her left side with her leg up on the defendant, who was facing her. His private parts were stiff and they were against the private parts of the victim.

Mrs. Collins grabbed the child and her panties from the bed. Defendant attempted to come after her, saying, "Come, bring her back, you damn bitch," but he was too drunk to reach her. Mrs. Collins ran out of the house, carrying the child. She testified that the child was crying and very frightened and the child immediately began telling her what had happened. The victim said that her father had had intercourse with her and repeated the words he had used during the occurrence.

The child was unable to walk, her dress was wet, and she was bleeding in her private parts. Mrs. Collins carried her, half walking, half running, to the cafe where Mrs. Boodry was employed. The journey took about half an hour. Mrs. Collins told Mrs. Boodry what had happened. Mrs. Boodry called the police and when

they arrived the child repeated her story to them.

Mrs. Boodry testified that when they arrived at the restaurant, Mrs. Collins was out of breath and Penny was white and swayed when she was set on her feet. There was blood in the child's vagina and blood on the bottom of her panties. She had a conversation with Mrs. Collins, and then she called the police.

The police testified that when they arrived Mrs. Boodry told them Penny had been raped. They talked with the child and then took her and her mother to the hospital. Officer Shugart, of the Phoenix police department, was first called to the cafe and then went to the house, where he arrested defendant, who was asleep on the bed. Defendant was taken to the police station and left alone in an interrogation room. The officer watched through a one-way mirror, from the next room. After three or four minutes defendant removed a blood stained handerkerchief from his right rear pocket. He looked all around the room and finally hid the handkerchief in a support underneath a table. The handkerchief, the child's panties, the wet and blood spotted sheet from defendant's bed and photographs of the bed were admitted in evidence.

Defendant testified, denying the commission of the crime. He stated that he had taken the two oldest children from Mrs. Collins and then laid down to take a nap. When he awoke the police were there. He admitted putting the handkerchief under the table at the police station, but stated that he had had a bloody nose.

Defendant was convicted, and he now appeals.

 This court has permitted defendant to amend his assignments of error to point out that A.R.S. § 13–1641 provides that "[a]n act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one." This was not called to the attention of the trial court. Defendant asserts that the case should be remanded to the Superior Court for re-sentencing. The State contends that where it is shown that a defendant has received two concurrent sentences on two counts in the same trial, based on one definite act, the remedy under the "double punishment" statute is to retain the convictions and remove the lesser sentence. People v. Chessman, 52 Cal.2d 467, 341 P.2d 679, 697, cert. den. 361 U.S. 925, 80 S.Ct. 296, 4 L.Ed.2d 241. The remedy for this error proposed by the State is appropriate, and the sentence imposed on the conviction for incest is hereby vacated.

We must, however, review defendant's assignments of error as they relate to the conviction for rape.

His first assignment complains of the County Attorney's refusal to stipulate to taking a polygraph test. The unreliability of these pseudo scientific tests was noted by this court in State v. Valdez, 91 Ariz. 274, 371 P.2d 894. The County Attorney properly refused defendant's request, and this assignment is without merit.

In his second assignment defendant contends that the trial court abused its discretion in not allowing him to reopen his case to impeach a State's witness after he had rested. The witnesses defendant offered had previously testified, and the questions which defendant's counsel desired to ask could have been asked then. The fact that defendant's counsel changed his mind as to his tactics was not grounds for reopening a case that was ready to go to the jury. The decision on a motion to reopen rests in the sound discretion of the trial court. The assignment is without merit.

The third and fourth assignments are based upon the theory that the testimony of Mrs. Collins, the neighbor who rescued the child, and of defendant's wife, Mrs. Boodry, as to statements made by the child, were hearsay. The child herself did not testify.

With regard to Mrs. Boodry's testimony defendant's counsel objected to the prosecution's question "What did she say about her daddy?" The question was designed to bring out the little girl's first statement to her mother. Mrs. Collins' testimony, to which defendant's counsel objected, also related to the little girl's immediate statements. We are here concerned only with the little girl's spontaneous expressions, made to the first person she saw, and to her mother the first time she saw her. In a rape case the spontaneous utterances and immediate complaints of the victim are a part of the res gestae. The evidence showed that both the victim and Mrs. Collins were still excited and out of breath when they arrived at the cafe where the mother worked. It is not necessary that this testimony be given by the victim herself. Certainly a five year old girl should be spared the necessity of testifying against her father in a rape case if at all possible. Soto v. Territory, 12 Ariz. 36, 94 P. 1104; State v. Brady, 66 Ariz. 365, 189 P.2d 198; State v. McLain, 74 Ariz. 132, 245 P.2d 278; State v. Hutchison, 222 Or. 533, 353 P.2d 1047, 83 A.L.R.2d 1361 and Note 83 A.L.R.2d 1368, Udall on Evidence § 174. Elmer v. State, 20 Ariz. 170, 178 P. 28, 2 A.L.R. 1519, relied on by defendant involved a 16 year old girl, and has no application to the situation here.

In Soto v. Territory, supra, in which the victim in a sodomy case was a four year old boy, this court held that the boy's complaint to his mother, made as soon as he got home and while he was still crying, was admissible. We said:

"We do not mean to imply that the time when such utterance is made with reference to the main event should not be an important or even a controlling factor in the exercise of the court's discretion in the admission of such testimony. Where the victim of an assault is of an age to render it improbable that his utterance was deliberate and its effect premediated in any degree, we do not think it is required that such utterance to be admissible as evidence shall have been so nearly contemporaneous with the event which gave rise to it as in the case of an older person, whose reflective powers are not presumed to be so easily affected or kept in abeyance. Testimony of declarations or statements made by a person under the rule of spontaneous utterance is admitted in evidence, notwithstanding he be not called as a witness and testify at the trial, and his testimony is admissible, notwithstanding he be incompetent as a witness because of youth." 12 Ariz. at 40, 94 P. at 1105.

Although the point is one upon which other jurisdictions are divided, Soto has been quoted with approval by Judge Miller of the District of Columbia Court of Appeals in Beausoliel v. United States, 71 App. D.C. 111, 107 F.2d 292.

In a similar case involving a five year old girl, the court said in Territory v. Kinoshita, 38 Hawaii 335:

"Where a female child under the age of five years, presumably incompetent to be a witness, is shown by other evidence to have been in company with the accused, under circumstances raising a question of his innocent or criminal intentions and where, on resuming companionship with her mother, such child tells the mother of indecent and improper liberties having been taken by the accused upon her person, such declarations become admissible under the discretion of the trial court and when admitted are substantive evidence of the conduct described under the recognized exception to the hearsay rule, variously characterized as part of the *res gestae* or spontaneous declarations; nor is it decisive against the admissibility of such declarations that the statements were made in response to a question; nor is the time element controlling; and once admitted, the credibility and weight to be given such declarations are for the trier of the facts."

 This, we believe, is a correct statement of the law. We are aware that the rule of Soto has not been followed in such cases as Ketcham v. State, 240 Ind. 107, 162 N.E.2d 247, but we believe that the rule that has been followed in Arizona since 1908 is the correct rule. We do not agree with defendant, or with the Indiana court, that five year old girls should be dragged into court to testify and to re-live

the horrifying experience of being raped. Of course, the victim's statements must be the immediate product of the shock of the crime, but that requirement is met here. We have no such delay as rendered the childrens' statements inadmissible in Keefe v. State, 50 Ariz. 293, 72 P.2d 425. The statements made to Mrs. Collins were made prior to those made to the mother, and were equally admissible.

The defendant's fifth assignment is that the trial court erred in refusing to strike defendant's answer of "yes" when asked if he had ever been convicted of a felony. Defendant took the stand in his own defense. A defendant who takes the stand may be impeached by prior felony convictions, in the same manner as any other witness. State v. Polan, 78 Ariz. 253, 278 P.2d 432; State v. Sorrell, 85 Ariz. 173, 333 P.2d 1081; A.R.S. § 13–163. The conviction was 11 years ago. Whether this is too remote is a question within the discretion of the trial judge, State v. Barker, 94 Ariz. 383, 385 P.2d 516. We do not believe the trial judge abused his discretion. The trial judge amply protected defendant's rights by not requiring him to reveal that the conviction had been for carnal knowledge and abuse of a 14 year old girl.

Finally, the defendant contends that he "was denied his constitutional right to confrontation", Ariz.Const. Art. 2, § 24, A.R.S., by the fact that the five year old victim was not produced as a State's witness, and that the trial court therefore erred in denying his motion for a directed verdict. There is no constitutional requirement that the victim of any crime testify. Here, the spontaneous utterance of the victim was admitted in evidence, not as her "testimony" but as a part of the res gestae of the crime. Her words were a part of the crime itself; the person who described the words to the court was the witness. See State v. Woolery, 93 Ariz. 76, 378 P. 2d 751, where the spontaneous utterances of the deceased victim were admitted in evidence. Clearly in Woolery the victim could not have been produced or cross examined by anyone. The right of confrontation conferred by Art. 2, § 24 Arizona Constitution is a right to confront witnesses not victims. It certainly confers no rights to terrify five year old girls, and the County Attorney acted most properly in not bringing the child into court. The assignment is without merit.

At the oral argument before this court, defendant's counsel requested permission to argue that certain instructions of the trial judge were incorrect. This matter was not covered in his brief or in his assignments of error. This permission was denied by the court, under Rule 20 of the Rules of the Supreme Court, 17 A.R.S. We have, however, reviewed the instructions for fundamental error and find none.

Judgment affirmed as to the conviction for rape, and sentence vacated as to the conviction for incest.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concur.