Hillsborough,
Nov. 2, 1937.

ROBERT M. BULLARD, *(by his father and next friend)*

*v.*

EDWARD McCARTHY.

MAURICE O. BULLARD *v.* SAME.

*Ivory C. Eaton* and *Gerald F. Cobleigh* (*Mr. Eaton* orally), for the plaintiffs.

*Hamblett & Hamblett* and *Robert F. Griffith* (*Mr. Griffith* orally), for the defendant.

MARBLE, J.   Alfred J. Houghton, one of the plaintiffs' witnesses, testified that he was driving west toward Milford at the time of the accident and had just passed a Ford car when he saw the defendant's car approaching from the west.   He described the accident as follows:

"I think, probably, we went 100 feet after I passed the car and I noticed a little boy coming down the side of the road .... He walked down the side of the road, to opposite the driveway, and he stopped and looked both ways, to see if he had plenty of time to cross the road; ... and he walked across the road, and I saw the car was still coming, it didn't slow down, and he got across the road, and into the driveway, at least fifteen feet, and he got hit with the bumper of the Buick, and the left wheel went over him."

In reply to the question, "Did you slow down when you passed the Ford car?" the witness said: "No, sir; not right when I passed the Ford car, but I did slow down when I saw the little boy going across

the road, as anybody should." Defendant's counsel moved that "the last part of the answer be stricken out as not responsive." The motion was denied and the defendant excepted.

A witness' answer does not constitute reversible error merely because it happens to contain unsolicited comment or information. *Pope* v. *Railroad*, 79 N. H. 52, 53; *Fuller* v. *Railroad*, 78 N. H. 366, 369. Counsel did not claim at the trial that the phrase objected to offended in any material way. He now contends, however, that "the entire testimony of this witness was characterized by persistent and flagrant attempts to insert prejudicial opinions into the record" and points to this particular answer as an instance of such an attempt. It does not appear that any suggestion of the sort was made to the Presiding Justice, and "It is well settled that this court will not consider grounds of exceptions not specified or called to the court's attention at the trial." *Plante* v. *Manchester*, 83 N. H. 57, 59.

The defendant requested the court to strike out a subsequent remark of the same witness as appears from the following excerpt: "Q. And you say he walked fifteen feet into the driveway before he was hit? A. He did. Q. You mean that driveway in front of the Cadorette house? A. Yes, sir; he was picked up opposite the tree, in the driveway. If the man had hit the tree, he wouldn't have hit the boy. *Mr. Hamblett*: I ask that last part be stricken out. *The Court:* No; it may stand. *Mr. Hamblett*: Subject to our exception."

The statement objected to was not improper. The witness merely described the position of the child by way of an illustration. As in the case of the earlier answer, if the defendant considered the evidence prejudicial he should have so indicated to the trial court. Having failed to do this, he takes nothing by his exception. *Lovett* v. *Railway*, 85 N. H. 345, 353.

At the conclusion of the evidence the defendant made the following offer of proof: "*Mr. Hamblett:* We offer to prove by this witness that a man who was driving the leading car coming in the opposite direction, immediately after the collision, came up and said, 'It was unavoidable.' *The Court:* The offer is excluded. *Mr. Hamblett:* Subject to our exception."

It is now claimed that this alleged statement was admissible as a part of the *res gestae*, although there is nothing in the record to show that any such contention was made in the Superior Court. The declaration, "was not even a relation of the facts which caused the accident, but was a mere statement of the opinion" of a third person as to the defendant's fault. *Boone* v. *Company*, 139 Cal. 490, 492.

There was no offer to prove facts from which it could be found "that the utterance was spontaneously made by reason of the excitement caused by the accident." *Semprini* v. *Railroad*, 87 N. H. 279, 281. Apparently the person who made the statement was unknown. The defendant's father in answer to the question, "The two cars that went through, you don't know who was in them?" said, "No, sir; we tried to find out."

If the ground of admission now claimed had been presented to the Presiding Justice, he would have been justified in excluding the evidence. Indeed, it is extremely doubtful if he could properly have admitted it even in his discretion. Under such circumstances the defendant's general exception raises no question of law. *Boulanger* v. *McQuesten*, 79 N. H. 175.

In the course of his argument to the jury plaintiffs' counsel said: "George McCarthy, the father, does admit that when the car stopped it was right where Houghton said that car was; it was twelve feet in that driveway, and Houghton said fifteen feet; Mrs. McCarthy estimated twelve feet—"

The defendant excepted to the allowance of this part of the argument on the ground that the evidence did not support it and that "Houghton's testimony was the car ran over the boy, when he was fifteen feet in the driveway."

It is true that counsel attributed to Mrs. McCarthy testimony given by another witness. But this error appears to be harmless. The plaintiffs' evidence tended to prove that the child was not struck until he had reached a point twelve or fifteen feet inside the driveway. The defendant claimed that the accident occurred out in the road and that in trying to avoid the child, who was running toward the car, he turned into the driveway. There was no material dispute as to the point where the car came to a stop, and in view of Houghton's testimony, which was fairly quoted (see *Maravas* v. *Insurance Co.*, 82 N. H. 533, 539), it was perfectly legitimate for counsel to argue that the accident happened at that point.

Furthermore the trial court has already passed upon this question. The defendant moved to set aside the verdicts on the following grounds: "that they were against the weight of the evidence; that they were against the law; that the jury was moved by bias, passion and prejudice; that the damages were excessive and that the trial was unfair." This motion was denied subject to the defendant's exception.

By denying the motion the Presiding Justice has found that the

jurors were not swayed by prejudice and that the trial was fair. *State v. Hale*, 85 N. H. 403, 413. Since the exception to the denial of the motion was not referred to in oral argument or mentioned in the defendant's brief, it is deemed to be waived. *Kenalos v. Company*, 81 N. H. 426, 427. The errors which plaintiffs' counsel committed in his argument to the jury were not harmful as a matter of law, and the trial court by denying the motion has impliedly found that they were harmless in fact.

The jury were instructed that the defendant could not be found negligent "for encountering dangers not reasonably to be sensed and not in fact known" and that if they should find that the boy ran across the highway, it was for them to say whether the defendant had any reason to anticipate that he would do so. The defendant excepted to this instruction on the ground that there was no evidence on which it could reasonably be found that he "had any opportunity to so anticipate."

The accident occurred on the main thoroughfare between Milford and Nashua. The traffic was extensive on this highway, and there were several houses near the Cadorette farm. The defendant could not ignore these facts. He was charged with notice that human beings, whether adults or children, might at any time exercise their right to walk along the road or to cross it. *St. Louis v. Railroad*, 83 N. H. 538, 541; *Golej v. Varjabedian*, 86 N. H. 244, 246.

Nor were the jury obliged to accept his assertion that he did not see the boy until the boy was "halfway past the left lane" of the road and "running full speed" in front of another car. *Clark v. Railroad*, 87 N. H. 36, 39. There is no intimation that the defendant was not paying attention to his surroundings. He was twenty-three years old and had held a driver's license since he was sixteen. Both Alfred Houghton and his wife saw the child coming down the road. The former testified that there was nothing that would obstruct anyone's view and that he observed the boy, when five hundred feet away, and "saw him walk about fifty or sixty feet along the side of the road." The defendant's father saw the child when they came to Round Pond, which was about six hundred feet distant from the scene of the accident. He denied calling his son's attention to the boy, but made the denial only after he had several times evaded a direct answer to the question.

This evidence was sufficient to justify the inference that the defendant saw the child before he started to cross the highway, and it is common knowledge that children often dart across a street in the

path of moving automobiles. The claim that the defendant had no opportunity to anticipate the child's conduct is therefore without merit.

The defendant also excepted "to the instruction on speed" on the ground that there was no claim "that excessive speed caused the accident, or evidence upon which anybody could find unreasonable speed contributed to the accident." The instruction excepted to was, in part, as follows: "Even though he [the defendant] was not driving over the statutory limit, . . . it still remains a question of fact, if the speed at which he was operating his car was negligent."

Speed was an issue in the case. Plaintiffs' counsel in the course of his argument to the jury said: "Now, what is Mr. Houghton's testimony? . . . When . . . he saw that child . . . he immediately took his foot off the accelerator, and that means he started to slow down. If Mr. McCarthy had done the same thing, we would not be here this afternoon, . . . with the McCarthy car six hundred feet away, if Edward McCarthy had simply taken his foot off from the accelerator, there would have been no accident."

Alfred Houghton stated that the boy "didn't run a step" and that the defendant "didn't slow down" while the boy was walking ("he wasn't running") across the road. Mrs. Houghton testified that the boy stopped and looked both ways before he started to cross and that "the car was trying to dodge him." On this evidence a jury could well find that the defendant did not check his speed and that his failure to do so contributed to the accident. *Kelley* v. *Lee, ante,* 100.

The exceptions in the action of Robert M. Bullard are overruled.

In the action of Maurice O. Bullard the defendant excepted to the refusal of the court to grant the following requests for instructions: (1) "It was negligent as a matter of law for the plaintiff to take no steps to provide for the safe return of his son across the highway and you will return a verdict for the defendant," or (2) "If you find that the plaintiff Maurice Bullard was negligent in taking no steps to provide for the safe return of his son Robert across the highway and that this negligence in any way contributed to the accident you will find for the defendant."

The plaintiff in this action does not question the applicability of the rule of law announced in the case of *Niemi* v. *Railroad,* 87 N. H. 1, but contends that there is no evidence that he was in any way at fault.

Attention is called to the following extracts from his testimony:

"Q. On Easter Sunday, did you and your wife and little boy go up to the Cadorette house? A. Yes, sir . . . Q. You put your car up here somewhere? . . . A. Yes. Q. Then what did you do. A. Went into the house; and we stayed there a few minutes, and the boy decided he wanted to go to his aunt's. Q. Where does his aunt live? A. Pretty near opposite the pond. . . . Q. You tell just exactly what you did and what the little boy did after he decided he wanted to go up there. A. I went out to the front of the house with him and I watched him go up the side of the road, he went up the left-hand side of the road, and when he got opposite their driveway, I saw him cross the road; I came down in front of the house and I watched him until he started on the piazza, and I knew he was out of the road entirely, so I went back into the house. Q. You went back into the house and were talking with the people? A. Yes, sir. Q. What was the next you knew? A. The next I knew was the accident; I heard the commotion of the cars, and I went out there . . . .

"Q. That is a main highway from Nashua to Milford, Wilton, Peterborough and Keene? A. Yes, sir. Q. Heavily travelled? A. Yes, sir. Q. A straight stretch along there? A. Yes. Q. You live right on the road, you know the traffic conditions there? A. Yes, sir. Q. What is the name of the relative he was going to see? A. Angelina Roy. Q. He was going up to Mrs. Roy's house? A. Yes. Q. You were very careful to go out with him? A. Yes and watched him all the way, yes, sir. Q. To see that he got across the road safely? A. Yes. . . . Q. You took no steps to see that he got back across the road on his return? A. No, sir."

It was the father's duty to exercise ordinary care for the child's safety and if his failure in that respect contributed to the accident, he cannot recover for the loss occasioned him by reason of the child's injury. *Niemi* v. *Railroad*, 87 N. H. 1, 8. He knew that it was dangerous for his son to be upon the highway alone. This is apparent from the vigilance he exerted while the child was on the way to Mrs. Roy's. He made no effort, however, to insure the child's safe return. His definite answer to that effect precludes any finding that he committed the care of the child to Mrs. Roy. At most, he may have expected that she would assume that duty. He did not even wait to see if the boy found his aunt at home. The boy's stay at Mrs. Roy's must have been brief, for his parents did not arrive at the Cadorette farm until after noon and the accident occurred shortly after two o'clock. Mrs. Roy did not testify.

These facts in our opinion require a submission of the issue of con-

tributory negligence to the jury in compliance with the defendant's second request for instructions. See Annotation, 51 A. L. R. 209, 218. In the trial of this issue the ordinary rules of the law of negligence are to be applied. 20 R. C. L. 617. The evidence relating to the child's conduct is extremely conflicting, and if, on a new trial, the jury should find that the child did nothing which a person of ordinary prudence in charge of a child would not have permitted, then the father's failure to exercise reasonable care for the child's protection would not be a contributing cause of the injury. *Wiswell* v. *Doyle*, 160 Mass. 42.

Whether or not justice requires a retrial of the issue of damages is a question for the Superior Court. *West* v. *Railroad*, 81 N. H. 522, 534.

*In the action of Robert M. Bullard, judgment on the verdict: in the action of Maurice O. Bullard, new trial.*

All concurred.