DAVID BERENGUER LÓPEZ ET UX. ET AL., Plaintiffs and Appellants, *v.* GOVERNMENT EMPLOYEES INSURANCE CO., Defendant and Appellee.

No. R-62-244.      Decided May 29, 1964.

*Luis Nieves López* for appellants. *Octavio Jiménez* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

We must decide in this case whether or not the driver of a motor vehicle, pickup type, is liable under the civil law for the death of a 5-year-old boy who was run over by the car on the highway leading from Guánica to Lajas.

The evidence adduced is not complex. On the day of the accident, May 21, 1961, about three o'clock in the afternoon two groups of persons were walking along the edge of said highway on a straight stretch of said road; one group was walking on the left-hand side and the other on the right-hand side, both going toward Lajas. In the same direction Carlos Rodolfo Nagel was driving said vehicle at a speed of 30 to 35 miles per hour. In the group walking on the right-hand side of the road was minor David Berenguer Torres beside his aunt, Milagros Torres Rodríguez, and the minor's sister, also a minor, and behind them his parents. According to the testimony of the only witness for the defense, María Rodríguez de Sánchez—who was traveling in an automobile driven by her husband in the same direction and about 35 feet behind Nagel's vehicle—she saw when the minor, who was walking on the right-hand side of the road "darted out at the very moment the bus was passing by." "He crossed to the left." She explained that the boy crossed suddenly when the vehicle operated by Nagel was passing. The trial court believed said testimony and not that offered by the minor's

relatives to the effect that the minor only advanced "two feet more or less away from the walk of the road to the pavement." The automobile hit the boy with the right front fender. Plaintiffs' witnesses testified that they did not hear Nagel's signal of the approach of his vehicle. The trial court decided that the accident was fortuitous, unforeseen and unavoidable; that plaintiffs were walking on the right-hand side of the highway in violation of the provisions of the Vehicle and Traffic Law of Puerto Rico; that said adults should have watched for the boy's safety; that "Nothing, moreover, indicated the boy's presence, nor that he, who was traveling within the group, was going to abandon his place of safety." By virtue thereof the trial court dismissed the complaint.

Appellants assign the commission of the following errors:

(1) In applying Art. 10, § 5, subd. B, of Act No. 141 of the Vehicle and Traffic Law of Puerto Rico, to the facts of the case.

(2) In dismissing the complaint under the theory that the minor's negligence was the proximate cause of the accident.

(3) In deciding that the accident was not the result of the driver's negligence; and

(4) In weighing the evidence and applying the law and the case law improperly to the proved facts in the case.

Because the four errors assigned by appellants are intimately related we shall discuss them jointly.

Let us review briefly the doctrine in relation to cases like the one before us. In *Figueroa* v. *Picó*, 69 P.R.R. 372 (1948) we said that a child of tender years is not required to conform to the standard of behavior which it is reasonable to expect of an adult, but his conduct is to be judged by the standard of behavior to be expected from a child of like age, intelligence, and experience. In said case liability was imposed on the driver of a panel delivery truck for the damages

caused to a 5-year-old minor when said minor darted to cross from a school to the avenue where the vehicle was passing. This case is different from the one under consideration. In the former the accident occurred in a school zone; this required the driver to be particularly careful and he was not. In *Alvarez* v. *Hernández*, 74 P.R.R. 460, 466–467 (1953) liability was imposed on the driver of an automobile for the death of a 9-year-old boy who was hit in a street in the municipality of Luquillo because when there are children playing, running, and pushing each other on the sidewalk, the driver of a vehicle is bound, "reasonably, to anticipate that said inherently dangerous situation might materialize by way of some sudden movement of a child onto the street" as it actually occurred. The circumstances in *Alvarez, supra,* differ from those under consideration. There is more similarity between the facts in *Díaz* v. *Stuckert Motor Co.,* 74 P.R.R. 486, 492 (1953), and the case under consideration, but in certain aspects the former case is different, because although the accident for which the driver of a car who caused the death of an 8-year-old minor was found liable, it occurred on a straight stretch of road where visibility was good and the vehicle was driven at normal speed pursuant to the law, we concluded that the minor was "walking fast on the edge of the walk or bridge towards the road" a fact which "was or could have been a clear indication that the minor would come onto the highway, and therefore, a reasonable warning to the driver that he should have exercised the highest degree of care possible to avoid striking him." In *Rodríguez* v. *Franqui,* 86 P.R.R. 727 (1962), under circumstances similar to those of *Alvarez,* we imposed liability on the driver of a vehicle for the damages caused to a minor whom he hit while crossing a bridge on a highway where the minor was playing with other boys and pushing each other. We said in that case that the situation on said bridge constituted "an extreme and unusual situation" to which we alluded in *Qui-*

*ñones* v. *Hernández*, 83 P.R.R. 206, 209 (1961). In the latter case we refused to impose liability on the driver of a vehicle for injuries caused to a minor when the boy rushed suddenly across McLeary Avenue in Santurce, departing from a group of five persons composed of three minors, an adult lady, and a 16-year-old girl who were returning from the beach and stopped on the north sidewalk of said avenue to cross when the traffic permitted them. We stated that "the fact that there are children quietly standing on a sidewalk is not to be considered as a dangerous situation, especially in the case of children who are watched by adults." We added that "The fact that the warning signal was not used, does not alter the conclusion we have reached. The obligation to make use of the warning signal was not clearly evidence, since the avenue was broad and there was nothing to prevent the view of the approaching vehicles. Besides, there was nothing to show that the child would leave his place of safety."[1]

■ Although it is not a decisive sign of negligence, it is worth pointing out that in the case under consideration neither appellants nor driver Nagel were complying with the obligations prescribed by the Vehicle and Traffic Law just before and until the moment that the accident which caused the death of the child in this case occurred. The former and the minor were traveling on the right-hand side of the highway, with their backs toward the traffic in violation of the provisions of § 5-1001, subd. (b) of said Law (9 L.P.R.A. § 1101). The driver, on his part, did not take all the precautions to avoid running over the group of pedestrians—that in this case were walking dangerously with their backs toward the traffic—even though they were incorrectly using the public highway, nor gave audible warning by horn of his approach, as prescribed by § 5-1002, subd. (a)(3) and

---

[1] See also *Freytes* v. *Municipality*, 80 P.R.R. 505 (1958) and *Alamo* v. *García*, 76 P.R.R. 598 (1954).

§ 5-1110, subd. (a) of said Law (9 L.P.R.A. § 1102(a)(3) and § 1140(a)).[2]

■ Although we cannot decide that the situation in the present case constituted a situation identical with the one prevailing in *Alvarez* and in *Rodríguez, supra,* it is no less evident that the same is different from that in *Quiñones, supra,* because the accident herein occurred on a highway in the rural area and the minor was neither quietly standing on a sidewalk "nor was under the custody or protection of an adult" because he was walking in a manner contrary to the provisions of the law, beside an adult person who was carrying another child in her arms, while his parents were walking about 25 feet behind him. (Tr. Ev. 10 and 19.) On the other hand we find no justification for the decision of the lower court to the effect that "Nothing indicated the presence of the child . . ." since evidence was not introduced to that effect and, as stated in *Bullard* v. *McCarthy,* 195 Atl. 355, 359 (N.H. 1937), there was nothing that would obstruct any-

---

[2] Section 5-1001, subd. (b) reads:

"(b) Pedestrians shall move only on the sidewalk and, where there are no sidewalks, they shall move upon the edge of the curb or left-side border or walk of the roadway facing traffic, and in no case shall they abandon same abruptly or hurriedly. In funeral processions afoot, pedestrians shall keep to the right side of the public highway, occupying not more than half of the main-travelled portion of the roadway."

Section 5-1002, subd. (a)(3) provides:

"(3) To take all precautions not to run over pedestrians. These precautions shall be taken even though the pedestrian is incorrectly or unlawfully using the public highway. The use of the horn shall not relieve the driver of criminal liability when such use is not accompanied by other safety measures."

Section 5-1110, subd. (a) provides:

"(a) In all those places of the rural zone where visibility is poor, or the characteristics of the public highway and the circumstances of traffic make it necessary for reasons of safety, it shall be the duty of every driver to give audible warning by horn.

"Any driver failing to give audible warning by horn according to the provisions of this subsection shall be guilty of a misdemeanor and shall upon conviction be punished by a fine of not less than five (5) dollars nor more than twenty-five (25) dollars."

one's view because the road was straight so that the inference that the defendant saw or could have seen the boy at a reasonable distance together with the other persons who were traveling on the right-hand side of the road is justifiable.

■ The rules applicable to children who are standing or walking on city sidewalks should be different from those applicable to children walking on the road side of rural highways because in the first case the driver, as we said in *Quiñones*, has the right to assume that the children will remain on the sidewalk, which is exclusively dedicated to pedestrians and not suddenly attempt to cross a street nor adapt it for the uses for which the sidewalk was intended. It is a common knowledge that in the rural area it is customary to travel on the highways as well as on the walks on its sides and unfortunately a frequent reaction among pedestrians in the rural area is to cross from one side to the other of the road especially under circumstances like the one in the present case in which some pedestrians were walking on the left-hand side and others on the right-hand side of the highway. *Brown* v. *Wade*, 145 So. 790 (La. 1933). The increasing number of pedestrians injured or killed on the roads of our country is indicative of the fact that neither the latter nor the drivers of motor vehicles use our means of transportation with due care and prudence.

■ In situations like the one we are discussing—in which the driver of a vehicle could observe at a distance two groups of persons walking on the sides of the highway with their backs toward him, among which there were children that because of their tender age have less discretion and may run into the road in obedience to their childish impulse—it is not too much to require that the driver take such precautions which may contribute to the safety of pedestrians whose presence has been noticed at a distance. In such cases he may sound his horn or reduce the speed and, under certain circum-

stances, even stop the vehicle. · *Wainwright* v. *Miller*, 130 S.E.2d 652 (N.C. 1963); *Haywood* v. *Fidelity Mut. Ins. Co. of Indianapolis*, 47 So.2d 59 (La. 1950); *Bullard* v. *McCarthy, supra*; *Avery* v. *Collins*, 157 So. 695 (Miss. 1934); *Irvine* v. *Carr*, 177 S.E. 208 (Va. 1934); *Aliff* v. *Barryman*, 160 S.E. 864 (W. Va. 1931); *Jacoby* v. *Gallaher*, 126 So. 86 (La. 1930); *Ball* v. *Witten*, 154 S.E. 547 (Va. 1930); *Leonard* v. *Fowle*, 152 N.E. 240 (Mass. 1926); 7 Am. Jur.2d §§ 429–450; 30 A.L.R.2d 9 (Anno: *Motorist-Duty to Children*).

In similar cases it has been said that when parents walk along highways with their children they are not expected to have them on a leash, or restrain them by force. It is only required that they exercise reasonable care for their safety. *Winner* v. *Sharp*, 43 So.2d 634 (Fla. 1949).[3] In the latter case it was also said, p. 636, that "Any one who in driving the highway kills a child without knowledge of what he has done is driving too fast."

■■ In the case at bar, a speed of 30 to 35 miles when approaching the two groups of pedestrians, one of which was walking with their backs to the oncoming traffic, who did not give any evidence of having noticed the approach of the vehicle, and among whom there were several children, was not the speed provided in § 5-101, subd. (a) of the Vehicle and Traffic Law (9 L.P.R.A. § 841(a)).[4] Plaintiffs, however, are guilty of concurring negligence in using the public highway in a manner contrary to the law without

---

[3] See in the same sense *Peperone* v. *Lee*, 160 So. 467 (La. 1935), and on the contrary *Wise* v. *Eubanks*, 159 So. 161 (La. 1935) decided two months prior to the former.

[4] Section 5-101, subd. (a) of said law reads:

"(a) The speed of a motor vehicle shall be regulated with due care, taking into account the width, volume of traffic, use, and condition of the highway. No person shall drive a vehicle at a speed greater than that which would enable him to have proper control of the vehicle, and to slow down or stop whenever necessary to avoid an accident."

exercising care and prudence in failing to keep the boy near them, so as to control better and more effectively any impulsive action on his part, and in failing to watch him constantly precisely because of the danger of the mode of traveling.

■ We acknowledge there is no adequate manner to measure in money the anguish that the unexpected and accidental death of a child may produce to his parents and brothers and sisters. In a case like this we believe that at the present time the full compensation should be $15,000. As the liability for the accident falls over both parties, the compensation awarded to each appellant should be reduced. *Widow of Dávila* v. *Water Resources Authority*, ante, p. 316; *Carolina Casualty Co.* v. *Guzmán*, 87 P.R.R. 857 (1963) ; *Acosta* v. *Tió*, 87 P.R.R. 248 (1963).

In view of the foregoing the judgment will be reversed and another rendered instead sustaining the complaint and by virtue thereof awarding each minor appellant a compensation of $500 and $5,000 to Berenguer and his wife, plus costs, including those corresponding to the present appeal.